(890 P.2d 1217)
No. 71,604

JERRY KING, *Appellant*, v. RALPH PIMENTEL, HOWARD UHL, BOBBY DALE COLLIER, and the CITY OF TOPEKA, KANSAS, *Appellees*.

Opinion filed February 24, 1995.

*Keith Renner,* of Barnett, Yockers & Renner, P.A., of Wakarusa, for appellant.

*Rene M. Netherton,* of Topeka, for appellee Ralph Pimentel.

*David Plinsky* and *Neil Roach,* chief of litigation, City of Topeka, for appellees City of Topeka, Howard Uhl, and Bobby Dale Collier.

Before BRISCOE, C.J., BRAZIL, J., and RICHARD W. WAHL, District Judge Retired, assigned.

WAHL, J.: Jerry King filed this action against Ralph Pimentel, Howard Uhl, Bobby Dale Collier, and the City of Topeka (City), alleging, *inter alia,* abuse of process, malicious prosecution, and a claim under 42 U.S.C. § 1983 (1988). King appeals from the trial court's order granting summary judgment in favor of the defendants on all claims.

The facts are relatively simple. Jerry King is a licensed mechanical contractor in the City. On March 21, 1988, King contracted with Drycleaning Equipment Company of Irving, Texas, (DECO) to supervise the installation of mechanical systems, including a commercial boiler, at the Hygienic Cleaners construction project in Topeka.

Ralph Pimentel worked for the City as a mechanical inspector in March 1988 in the building inspection department, and How-

ard Uhl and Bobby Dale Collier were Pimentel's supervisors. On March 8, 1988, Pimentel issued a stop work order at the Hygienic construction site because DECO was not licensed to perform mechanical construction in Topeka. In response, DECO hired King to oversee the construction as a licensed mechanical contractor.

King alleges he talked with Pimentel about the Hygienic project before he began work there and Pimentel assured him there were no mechanical problems at the site. After he began working on the Hygienic project, King discovered a boiler flue DECO had installed prior to March 21, 1988, was not in compliance with the mechanical code. Pimentel later stated that he knew a problem existed with the boiler flue prior to March 21, 1988.

King claims he attempted to correct the problem, but when DECO would not cooperate, he turned to the City for help. King contacted Pimentel and several other City building inspectors to request the City to use its enforcement power against DECO to force DECO to comply with the City's mechanical code.

On April 6, 1988, Pimentel issued a violation notice to DECO. The notice cited DECO for the improper boiler flue. The mechanical code required metal chimneys like the boiler flue to be made of 10-gauge or thicker steel. The boiler flue at the Hygienic site was only 20-gauge steel.

Lewis Golden, owner of the Hygienic project, contacted the mayor of Topeka concerning the problems he was having with the building inspection department. The mayor, or an assistant, contacted employees in the building inspection department to inquire about the mechanical problems at the Hygienic site.

DECO did not correct the problem, and King continued to seek help from the City. On May 16, 1988, Pimentel issued another violation notice, this time citing King for the boiler flue problem. This second notice also indicated an official complaint had been filed in municipal court.

It is totally unclear what resulted from the violation notice issued to DECO. It appears to have simply been ignored. On June 9, 1988, a criminal complaint was filed in municipal court charging King with a violation of the City's mechanical code. On October 28, 1988, King was convicted after a bench trial. On January 30,

1989, the municipal court imposed a fine on King as a penalty for the conviction, which was later reduced.

King appealed his conviction and sentence to the district court. On June 1, 1989, an order dismissing the charge against King was filed in district court. The record is unclear why the charge was dismissed.

King filed a written notice of his claim against the City on May 7, 1990, pursuant to K.S.A. 12-105b(d). The City did not respond within 120 days. On September 28, 1990, King commenced this action in the district court. In that petition and in his three amended petitions, King sought recovery of damages for abuse of process, malicious prosecution, tortious interference with prospective business relations, intentional infliction of emotional distress, and loss of consortium. In addition, King made due process and equal protection claims under 42 U.S.C. § 1983. Each of the claims for relief arose out of events related to King's work at the Hygienic site and his prosecution for violating the mechanical code.

On January 7, 1993, the trial court granted summary judgment in favor of all the defendants on King's claims for abuse of process, malicious prosecution, tortious interference with prospective business relations, and intentional infliction of emotional distress. King subsequently agreed to forgo the claim for loss of consortium. On April 4, 1994, the trial court granted summary judgment in favor of all the defendants on King's equal protection and due process claims.

The rules concerning summary judgment have been stated many times by the Kansas appellate courts. These rules are succinctly stated in *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994):

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, . . . with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment,

the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."

The trial court granted summary judgment to defendants on King's claims for abuse of process and malicious prosecution after finding those claims barred by the applicable statutes of limitations. King claims that the defendants did not properly plead an affirmative defense based upon the statute of limitations and, therefore, should not be entitled to summary judgment based upon that defense.

A defense based upon a statute of limitations is an affirmative defense, and the burden of pleading and proving its applicability rests on the defendant. *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). K.S.A. 1993 Supp. 60-208(c) requires a defendant to affirmatively plead a defense based upon the statute of limitations in the answer. The defendants' first summary judgment motion was based primarily on a statute of limitations defense. However, when the motion was filed, none of the defendants' pleadings included a statute of limitations defense. The defendants did include a statute of limitations defense in their answers to King's third amended complaint, which was filed after their motion for summary judgment was filed but before the motion was heard and decided by the trial court. King filed a motion to strike the statute of limitations defense from the defendants' answers to his third amended complaint. The trial court denied that motion.

King amended his petition a third time to add Collier as a defendant. He contends it was unfair to allow the defendants to add a statute of limitations defense in response to an amendment which simply added a party and did not alter the substantive issues in the case. He claims it was particularly unfair in this case because the defendants initially opposed his motion to amend the complaint to add Collier as a defendant. King argues, pursuant to K.S.A. 60-215(a) that the defendants should have filed a motion to amend their answers if they wanted to plead a statute of limitations defense and, by allowing them to include the defense in

their answer to his third amended petition, the trial court sanctioned the defendants' attempt to circumvent the requirements of K.S.A. 60-215(a).

K.S.A. 60-215(a) provides: "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within twenty (20) days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders." The defendants argue that they were required by K.S.A. 60-215(a) to file a responsive pleading to King's third amended petition and, therefore, did not have to file a motion to amend to include an affirmative defense which they failed to include in earlier pleadings.

Collier's answer to King's third amended petition was Collier's first pleading in the case. He had a right to raise any appropriate affirmative defense in his answer, including the statute of limitations. With regard to the other defendants, the question is whether a party responding to an amended pleading as required by K.S.A. 60-215(a) may include additional claims or defenses the party failed to include in an earlier pleading if those additional claims or defenses do not relate to the specific amendment being responded to.

Rule 15 of the Federal Rules of Civil Procedure is nearly identical to K.S.A. 60-215, and the Kansas Supreme Court has found decisions construing the federal Rule persuasive in construing K.S.A. 60-215. *Marr v. Geiger Ready-Mix Co.*, 209 Kan. 40, Syl. ¶ 2, 495 P.2d 1399 (1972). The United States Court of Appeals, Seventh Circuit, has considered a similar question. In *Marcus v. National Life Insurance Company*, 422 F.2d 626 (7th Cir. 1970), the appeals court considered whether the district court acted properly by permitting a defendant to interpose a statute of limitations defense in response to an amended petition which merely increased the amount claimed as damages. The plaintiff filed a motion to amend his petition after a jury had been empaneled but before the trial began. The district court granted the motion; in response, the defendant asserted, for the first time, a statute of limitations defense in its answer. The plaintiff's motion to strike the defense was denied, and the district court ultimately granted the defendant's motion for a directed verdict. 422 F.2d at 627.

In *Marcus*, the plaintiff argued it was prejudicial to permit the statute of limitations defense to stand because he had already expended large sums in discovery and preparation for trial. The Court of Appeals determined the decision to permit or strike the statute of limitations defense was a matter of district court discretion and, under the particular facts of the case, upheld the district court's decision denying the motion to strike. 422 F.2d at 630-31.

Under Kansas law, the defendants were required to file a responsive pleading to King's third amended petition. K.S.A. 60-215(a). The appropriate pleading to respond to a petition is an answer. K.S.A. 60-207(a). K.S.A. 1993 Supp. 60-208(c) provides in part: "In pleading to a preceding pleading a party shall set forth affirmatively . . . statute of limitations." Technically, the defendants complied with the applicable rules of civil procedure by including the affirmative defense based upon the statute of limitations in their answers to King's third amended petition. Because the effect of including new affirmative defenses in this situation is akin to amending a previous pleading, a trial court has discretion to permit or deny the new claims or defenses upon a motion to strike.

Ruling on a motion to strike a defense from a pleading pursuant to K.S.A. 1993 Supp. 60-212(f) rests in the sound discretion of the trial court. *Diversified Financial Planners, Inc. v. Maderak*, 248 Kan. 946, 947, 811 P.2d 1237 (1991). In determining whether to permit or strike the new defense or claim in these situations, a trial court takes into consideration the same factors that it would consider when ruling on a motion to amend pursuant to K.S.A. 60-215(a). This was the rationale used by the court in *Marcus*.

K.S.A. 60-215(a) provides leave to amend a pleading "shall be freely given when justice so requires." A trial court is given broad discretionary power to permit amendment of pleadings, and its actions will not constitute reversible error unless it affirmatively appears the amendment allowed or denied is so material it affects the substantial rights of the adverse party. *Williams v. Amoco Production Co.*, 241 Kan. 102, 109, 734 P.2d 1113 (1987).

In this case, it does not affirmatively appear denial of King's motion to strike the defendants' statute of limitations defense is

so material as to affect King's substantial rights. Collier had every right to plead a statute of limitations defense in his first answer to King's third amended petition which added Collier as a party. King had to address the statute of limitations defense even if the remaining defendants had not asserted it. Hence, permitting the remaining defendants to assert a statute of limitations defense did not impose a burden on King in terms of his preparation. While more than a year elapsed between the date the defendants filed their original answer and the date they finally asserted a statute of limitations defense in their third answer, that fact alone would not require the trial court to grant King's motion to strike.

Reasonable people could agree with the trial court's decision denying King's motion to strike the statute of limitations defense. No abuse of discretion has been shown. The trial court did not err in denying the motion.

The trial court granted the defendants' motion for summary judgment on King's claims for abuse of process and malicious prosecution, ruling those claims were barred by the applicable statutes of limitation. Summary judgment may be appropriate on the affirmative defense of the statute of limitations where there is no dispute or genuine issue as to the time when the limitations period commenced to run. *Olson v. State Highway Commission*, 235 Kan. 20, 28, 679 P.2d 167 (1984).

The trial court determined King's cause of action for abuse of process accrued on June 9, 1988, the date the criminal complaint was filed against King in municipal court. A two-year limitations period applies to claims for abuse of process. K.S.A. 1993 Supp. 60-513(a)(4). Therefore, unless the limitations period was extended or tolled in some manner, the limitations period would have expired on this claim on June 11, 1990 (June 9, 1990, was a Saturday).

The defendants dispute that June 9, 1988, is the date on which King's cause of action for abuse of process accrued. They argue King's cause of action for abuse of process accrued on May 16, 1988, when Pimentel issued King a violation notice citing him for the improper boiler flue. The problem with the defendants' argument is they did not appeal from the trial court's ruling in this

regard or file a cross-appeal. Consequently, this court need not address the defendants' argument. We do note, however, to the extent King claims he was injured by the institution of criminal proceedings against him, his cause of action for abuse of process would have accrued, at the earliest, on the date when the charges were filed, June 9, 1988.

The trial court determined, and both parties agree, that King's cause of action for malicious prosecution accrued on June 1, 1989, the date the criminal charge against him was dismissed in district court. See *Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan. App. 2d 461, 701 P.2d 977, *rev. denied* 238 Kan. 877 (1985). A one-year limitations period applies to claims for malicious prosecution. K.S.A. 1993 Supp. 60-514(b). Unless tolled or extended in some manner, the limitations period expired on this claim on June 1, 1990.

King filed his original complaint on September 28, 1990, after the limitations periods for the abuse of process and malicious prosecution claims had run. He claims, however, that the limitations periods were extended by operation of K.S.A. 12-105b(d), which provides in relevant part:

"Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. . . . Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality unless the claim has been denied in whole or part."

The trial court ruled that K.S.A. 12-105b(d) only applied to claims against municipalities and did not extend the applicable limitations periods on King's claims against the individual defendants. The court also analyzed King's claims against the City and determined, notwithstanding the provision for extension of the statute of limitations periods, the limitations periods on the abuse of process and malicious prosecution claims expired before King filed his petition in district court.

The trial court ruled a party is not required to provide a municipality with written notice of a claim pursuant to K.S.A. 12-105b(d) for claims against municipal employees under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*; therefore, the provision for extension of the applicable statute of limitations for compliance with the notice requirement of K.S.A. 12-105b(d) did not operate to extend the applicable limitations periods on King's claims against Pimentel, Uhl, and Collier. The trial court relied on *Bradford v. Mahan,* 219 Kan. 450, 548 P.2d 1223 (1976), in support of its ruling.

Bradford sued Mahan, an Olathe police officer, for libel and slander. Mahan argued that Bradford failed to state a cause of action in his petition because he failed to allege the statutory notice required by K.S.A. 12-105 (Weeks) (repealed L. 1979, ch. 186, § 33). That statute provided in relevant part:

"No action shall be maintained by any person or corporation against any city on account of injury to person or property unless the person or corporation injured shall within six (6) months thereafter and prior to the bringing of the suit file with the city clerk a written statement, giving the time and place of the happening of the accident or injury received, the circumstances relating thereto and a demand for settlement and payment of damages . . . ."

When *Bradford* was decided, a municipality was not liable for the negligence or the misconduct of its police officers even when the police officers were engaged in the performance of governmental functions. 219 Kan. at 453. Consequently, the court held the notice requirements of K.S.A. 12-105 applied only to actions against a municipality and were not a condition precedent to bringing an action against a police officer engaged in the performance of a governmental function. 219 Kan. at 453.

The trial court noted that K.S.A. 12-105 had been repealed since the Supreme Court issued the *Bradford* decision. It relied, however, on this court's pronouncement in *Tucking v. Board of Jefferson County Comm'rs,* 14 Kan. App. 2d 442, 796 P.2d 1055, *rev. denied* 246 Kan. 770 (1990), that prior statutes and accompanying cases should be considered in interpreting K.S.A. 12-105b(d). In so stating, this court referred to the rule that when determining legislative intent, courts are not limited to consid-

eration of the language used in a statute but may look to the historical background of the enactment. 14 Kan. App. 2d at 445. Applying this principle, this court determined that like in K.S.A. 12-105, the notice of claim requirement found in K.S.A. 12-105b(d) was mandatory and no action under the KTCA could be maintained unless a party alleged substantial compliance with the notice requirement in the pleadings. 14 Kan. App. 2d at 445.

The trial court believed *Tucking* legitimized its application of the rule from *Bradford* to conclude that the notice requirement of K.S.A. 12-105b(d) was not a prerequisite to filing an action under the KTCA against municipal employees, such requirement being a prerequisite for actions against a municipality only. The trial court then concluded K.S.A. 12-105b(d) did not operate to extend the applicable limitations periods on King's claims against Pimentel, Uhl, and Collier.

This issue presents a question of statutory interpretation, which is a question of law. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993).

We must concede a strict interpretation of K.S.A. 12-105b(d) supports the trial court's conclusion the notice of claim requirement applies only to claims against a municipality and not municipal employees. The statute is silent with regard to claims which could give rise to an action against municipal employees under the KTCA. However, the statutory language also permits a broader interpretation. We find K.S.A. 12-105b(d) applies to both claims against a municipality and to claims against municipal employees acting within the scope of their employment.

The law with regard to municipal liability has changed significantly since the *Bradford* decision. Now, under the KTCA, a governmental entity's liability for the negligent or wrongful acts or omissions of its employees, while acting within the scope of their employment, is the rule rather than the exception. K.S.A. 75-6103. Additionally, a governmental entity is obligated, with certain exceptions, to provide a defense for employees defending

actions under the KTCA and is liable and must indemnify its employees against damages for injury or damage caused by the employees while acting within the scope of their employment. K.S.A. 75-6108, K.S.A. 75-6109, and K.S.A. 75-6116.

The notice of claim requirement in K.S.A. 12-105b(d) affords a municipality an opportunity to review and investigate tort claims against it and to approve or deny such claims before having to litigate an action under the KTCA. Because a municipality faces significant liability, both in actions brought against it and actions brought against its employees under the KTCA, we conclude the legislature intended written notice of a claim under K.S.A. 12-105b(d) would be a prerequisite for bringing an action under the KTCA against municipal employees who cause injury or damages to another while acting within the scope of their employment. Such an interpretation of K.S.A. 12-105b(d) eliminates the necessity of bringing two separate KTCA actions, one against the municipality and one against individual municipal employees when, as here, the statute of limitations period expires before the municipality has responded to the notice of claim.

The trial court ruled King's claims for abuse of process and malicious prosecution against the City were barred by the applicable statutes of limitations without considering K.S.A. 12-105b(d). King claims the trial court improperly computed the number of days by which the limitations periods were extended by operation of K.S.A. 12-105b(d) and argues he filed his petition within the extended limitations periods. A summary of relevant events is helpful for an analysis of this issue:

3- 8-88   Pimentel issued a stop work order at the Topeka site because DECO was not license to do mechanical construction in Topeka

3-21-88   King was hired as a licensed mechanical contractor

4- 6-88   Pimentel issued violation notice to DECO about the flue

5-16-88   Pimentel issued another violation notice only to King and also stated an official complaint had been filed in municipal court

6- 9-88   criminal complaint filed in municipal court charging King with violation of the mechanical code

10-28-88   King convicted after a bench trial in municipal court

1-30-89   King fined/King appealed

6- 1-89   district court dismissed the charge against King

5- 7-90   King filed his notice of claim with the City under K.S.A. 12-105b(d)

6- 1-90   statute of limitations period would expire on malicious prosecution claim

6-11-90   statute of limitations period would expire on abuse of process claim

9- 4-90   120 days from King's notice of claim to the City

9-28-90   petition filed

9-30-90   120 days from end of limitations period for malicious prosecution

10- 9-90   120 days from end of limitations period for abuse of process

The applicable statutes of limitations expired after King had filed his notice of claim with the City but before the City responded. In this case, the City never responded, and the claim is deemed denied on September 4, 1990, 120 days after the notice of claim was served on the City. K.S.A. 12-105b(d). K.S.A. 12-105b(d) provides in relevant part:

"Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, if compliance with the provisions of this subsection would otherwise result in the barring of an action, such time period shall be extended by the time period required for compliance with the provisions of this subsection."

The trial court interpreted this provision to mean that the limitations periods were extended until September 4, 1990, the date on which King learned the City had denied his claim. This court rejected such an interpretation of K.S.A. 12-105b(d) in *Martin v. Bd. of Johnson County Comm'rs*, 18 Kan. App. 2d 149, 157, 848 P.2d 1000 (1993):

"If the rejection period of a notice of claim filed pursuant to 12-105b(d) extends beyond the end of the statute of limitations period, the statute of limitations is

extended by the amount of time that elapses between the filing of the notice of claim with the municipality and its rejection. The length of the extension of the statute of limitations will vary from case to case, but the longest possible extension of the statute of limitations would be 120 days."

Because the City never responded to the notice of claim, it was deemed denied on September 4, 1990, 120 days after the notice of claim was served upon the City. The applicable limitations periods were extended by 120 days under the rule in *Martin*. King's petition was filed within the extended limitations periods on his abuse of process and malicious prosecution claims, and the trial court erred in holding the statutes of limitations had expired.

King claims that the defendants' actions deprived him of rights secured under the United States Constitution and argues his allegations are sufficient to sustain a claim under 42 U.S.C. § 1983 (1988), which reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

King claims the defendants' actions violated his right to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution. He alleges he did not install the boiler flue which resulted in the mechanical code violation and the defendants were aware he was not responsible for the mechanical code violation; therefore, no probable cause existed to file criminal charges against him. He also claims the City's governing body did not intend a violation of the mechanical code to be punishable as a crime; hence, the initiation of criminal proceedings against him was wrongful. The trial court ruled that there was probable cause to initiate criminal proceedings against King and, under the Topeka Code, a mechanical code violation was a crime.

Section 1-5(b) of the Topeka Code states: "Whenever any offense is declared by any provision of this Code, absent a specific or unique punishment prescribed, the offender shall be punished

in accord with this section." Such offenses are deemed misdemeanors. Topeka Code § 1-5(d). The criminal complaint charged King with violating § 914A of the Uniform Mechanical Code, 1982 edition, which is incorporated by reference into the Topeka Code at § 10-417. Topeka Code § 10-417 does not prescribe a unique or specific punishment for a violation of the Uniform Mechanical Code. The trial court correctly determined a criminal prosecution could be founded on a violation of the mechanical code.

King alleges the Topeka Code does provide a unique and specific punishment for a violation of the mechanical code at § 10-34. That ordinance provides the applicable trade board, in this case the mechanical trade board, shall have the power to suspend or revoke a trade license for failure to correct a written violation notice or for subsequent violations. That the City has provided procedures for issuing, suspending, and revoking trade licenses does not indicate that it has provided a specific and unique punishment for violation of the mechanical code. Unlicensed individuals who receive building permits pursuant to § 10-40.3 would also be responsible for compliance with § 10-417 and the Uniform Mechanical Code.

The question remains whether King's allegations that the criminal prosecution against him was initiated without probable cause states a claim for relief under § 1983 for violation of his constitutional right to due process. King claims he has a liberty interest against wrongful prosecution and that the defendants' actions deprived him of this liberty interest. The complaint filed June 9, 1988, charges King with violating the mechanical code by improperly installing a chimney on May 16, 1988. It is undisputed King did not install the boiler flue in question and he was not the licensed mechanical contractor at the Hygienic site at the time the boiler flue was installed.

The Kansas Supreme Court has recently considered whether a § 1983 claim may be based on malicious prosecution. *Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 964 (1994). The court recognized a split of opinion on the matter, even within a recent United States Supreme Court case, *Albright v. Oliver*, 510 U.S. \_\_\_, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994). The Kansas court

followed its prior decision in *Alvarado v. City of Dodge City*, 238 Kan. 48, 708 P.2d 174 (1985). Quoting *Alvarado*, the court recognized that "where a deprivation of life, liberty, or property is 'caused by a random and unauthorized state act for which prior process is impracticable or impossible,' a post-deprivation remedy is the avenue for redress and a § 1983 claim does not lie." 255 Kan. at 628.

If King's prosecution for violation of the mechanical code was wrongful, it was the result of a random act for which prior process was impracticable. Hence, the post-deprivation remedy of a state tort claim for malicious prosecution is the appropriate avenue for redress, and the trial court was correct in denying King's § 1983 claim.

King also claims he was denied equal protection of the law by the unequal application of the mechanical code by the defendants. In support, he cites several examples of the defendants' failure to enforce applicable building codes on other construction projects despite knowledge that violations existed.

That a state or governmental entity applies a law to one person and not to another does not, in itself, constitute a denial of equal protection. It must also be shown there was an element of intentional or purposeful discrimination. A discriminatory purpose is not presumed. There must be some evidence showing clear and purposeful discrimination. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 387, 673 P.2d 1126 (1983). The failure to prosecute other violators does not establish a selective enforcement claim. There must also be a showing the prosecution was deliberately based upon an arbitrary, illegal, or otherwise unjustifiable standard. 234 Kan. at 387.

One court has determined that liability under § 1983 for selective enforcement should depend upon proof that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d

606, 609-10 (2d Cir. 1980). See *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1352 (2d Cir. 1994).

The trial court ruled King had failed to come forward with evidence to establish a disputed material fact that the prosecution was deliberately based upon an arbitrary, illegal, or otherwise unjustifiable standard.

King points to evidence which he contends establishes his prosecution was based upon an improper standard. The owner of the Hygienic project contacted the mayor's office to discuss the Hygienic project. The mayor in turn contacted the building inspection department to inquire specifically about the mechanical systems at the site. The building inspection department normally allowed a code violator an opportunity to correct a code violation before referring the matter to the city attorney's office for prosecution, and the defendants departed from this procedure in King's case.

Even when this evidence is viewed in a light most favorable to King, it fails to establish a disputed material fact that his prosecution for a code violation was based upon an arbitrary or malicious standard. It is undisputed that others have been prosecuted for building code violations. Based upon the evidence of record, a jury would have to resort to unreasonable speculation to infer the defendants acted arbitrarily or maliciously by issuing a violation notice and instituting criminal proceedings against King for the code violation. That King was prosecuted for a code violation which he claims to have brought to the attention of the building inspection department does not establish his prosecution was based upon an arbitrary or malicious standard. Although there is evidence others have not been issued violation notices or prosecuted for known code violations, because King failed to come forward with evidence to establish a genuine disputed material fact that his prosecution was based upon an arbitrary, illegal, or otherwise unjustifiable standard, the trial court correctly granted the defendants' motion for summary judgment on his § 1983 equal protection claim.

Affirmed in part, reversed in part, and remanded for further proceedings on King's state tort claims for malicious prosecution and abuse of process against all defendants.