No. 119,155

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AARON NASH,
*Appellant*,

v.

PATRICK T. BLATCHFORD, M.D.,
*Appellee*.

SYLLABUS BY THE COURT

1.

Where an unambiguous written contract controls an employment relationship, whether one party to the agreement is an employee or an independent contractor is a question of law subject to unlimited review.

2.

Any person having a claim against a municipality or an employee of a municipality which could give rise to an action brought under the Kansas Tort Claims Act is required to file a written notice as provided in K.S.A. 2017 Supp. 12-105b(d).

3.

A medical malpractice claim against an employee of a municipally owned hospital falls under the Kansas Tort Claims Act even if that employee is a health care provider as defined in K.S.A. 2017 Supp. 75-6115(c)(3).

4.

The Kansas Tort Claims Act and K.S.A. 2017 Supp. 12-105a(h) specifically exclude an independent contractor from their definitions of employee, but these same

1

statutes provide a broad definition of employee as they do not exclude as employees all persons not specifically listed. These statutes also do not define independent contractor.

5.

An independent contractor has been consistently defined as one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of the employer, except as to the results or product of his or her work. The primary test used is whether the employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer but the existence of the right or authority to interfere or control which renders one a servant rather than an independent contractor.

6.

The fact that a municipal hospital has no right to control or supervise a physician in his or her professional care of an individual patient is not sufficient, in and of itself, to create an independent contractor relationship between the physician and the hospital.

7.

K.S.A. 2017 Supp. 40-3403(h), which abrogated all hospitals' vicarious liability for physicians in the medical malpractice context, does not compel a finding that a physician must be an independent contractor as a matter of law.

8.

The question of whether a physician is an employee or an independent contractor of a hospital must be determined after consideration of the totality of the written agreement and the intent of the parties.

9.

The 2015 amendments to K.S.A. 12-105b(d), enacted after a party's claim has accrued but before suit has been brought, may be retroactively applied provided the party has a reasonable time to comply with the notice requirements before the suit is barred.

10.

The 2015 amendments to K.S.A. 12-105b(d) do not deny equal protection under the law to medical malpractice victims of municipally employed physicians as the notice requirements are rationally related to the legitimate governmental purpose of giving a municipality notice of a claim against one of its employees.

Appeal from Cowley District Court; LADONNA L. LANNING, judge. Opinion filed January 4, 2019. Affirmed.

*Kala Spigarelli*, of The Spigarelli Law Firm, of Pittsburg, for appellant.

*Anthony M. Singer* and *Matthew P. Sorochty*, of Woodard, Hernandez, Roth & Day, L.L.C., of Wichita, for appellee.

Before GARDNER, P.J., ATCHESON and POWELL, JJ.

POWELL, J.: Aaron Nash appeals the district court's grant of summary judgment in favor of Patrick T. Blatchford, M.D., for Nash's failure to file a notice of claim under K.S.A. 2017 Supp. 12-105b(d). Nash argues the district court erred because (1) he was not required to file a notice of claim since Blatchford is an independent contractor of a municipal hospital and K.S.A. 2017 Supp. 40-3403(h) abrogated a hospital's vicarious liability in malpractice claims; (2) if Blatchford is an employee of a municipal hospital, the district court erred in retroactively applying the 2015 amendments to K.S.A. 12-105b(d) to bar his claim; and (3) the K.S.A. 2017 Supp. 12-105b(d) notice of claim requirement denies equal protection under the laws to medical malpractice victims of physicians

3

employed at municipal hospitals. For the reasons more fully explained below, we disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2017, Nash filed a medical malpractice suit against Blatchford, asserting damages from an alleged negligently performed surgery in January 2015. After filing his answer, Blatchford moved for summary judgment, arguing the district court lacked jurisdiction over Nash's claim because Blatchford is an employee at a municipal hospital and Nash was required and failed to file a written notice of claim under K.S.A. 12-105b(d) before suing him in the district court. Blatchford attached an affidavit (not included in the record on appeal), attesting to his employment status at South Central Kansas Regional Medical Center (South Central). Blatchford also argued that because of Nash's failure to comply with the notice requirement and the expiration of the two-year statute of limitations on his claim, any later attempt by Nash to refile the claim after filing a notice of claim was time-barred according to *Gessner v. Phillips County Comm'rs*, 270 Kan. 78, 11 P.3d 1131 (2000).

Nash asserted several arguments in response, including—assuming Blatchford is an employee of South Central—that the 2015 amendments to K.S.A. 12-105b(d) should not apply retroactively to bar his claim and he need not file a notice of a claim under K.S.A. 12-105b(d) because K.S.A. 40-3403(h) abrogated a hospital's vicarious liability for a doctor's negligence whether the doctor was an employee or an independent contractor. Finally, Nash argued that because the parties had not conducted discovery, summary judgment was premature on whether Blatchford was an employee or an independent contractor of South Central.

After hearing additional argument, the district court ordered the parties to conduct discovery and to submit supplemental briefing on Blatchford's employment status. These

4

facts remained uncontroverted. Blatchford is licensed to practice medicine as a physician in Kansas. South Central is a municipally owned hospital subject to K.S.A. 75-6101 et seq., the Kansas Tort Claims Act (KTCA). Blatchford entered into a written contract with South Central in 2006 during his residency program and then entered into a new written contract in 2008 (with a 2010 addendum), which is still in effect. Nash asserted no claims against South Central. Between December 2014 and January 7, 2015, Nash received medical care and treatment from Blatchford.

After discovery, the district court granted summary judgment for Blatchford, holding it lacked jurisdiction to consider Nash's claim because Blatchford was an employee of South Central and Nash had failed to file a notice of claim as required under K.S.A. 2017 Supp. 12-105b(d).

Nash timely appeals.

I.    WAS NASH REQUIRED TO FILE A NOTICE OF CLAIM?

Our standard of review of a district court's grant of summary judgment is well established:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' An appellate court reviewing a district court's ruling on a motion for summary judgment applies the same legal standard and, because the motion is considered on uncontroverted facts and under the same standard as the district court, reviews the matter de novo as a question of law, granting no deference to the district court's judgment. [Citations omitted.]" *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014).

5

To the extent our review requires interpretation of K.S.A. 2017 Supp. 12-105b, or any other relevant statute, this too

> "is a question of law subject to de novo review. When interpreting a statute, the court first attempts to discern the legislature's intent through the language enacted, giving common words their ordinary meanings. When statutory language is plain and unambiguous, the court does not speculate as to legislative intent, and does not read into the statute words not readily found there. It is only when the language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning. [Citations omitted.]" *Whaley v. Sharp*, 301 Kan. 192, 196, 343 P.3d 63 (2014).

"[E]ven when various statutory provisions are unambiguous, we may still construe them in pari materia with a view of reconciling and bringing the provisions into workable harmony." *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 919, 349 P.3d 469 (2015) (citing *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 571 U.S. 826 [2013]).

K.S.A. 2017 Supp. 12-105b(d) states:

> "(d) Any person having a claim against a municipality or *against an employee of a municipality* which could give rise to an action brought under the [KTCA] shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: . . . Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality *or against an employee of a municipality* unless the claim has been denied in whole or part. Any action brought pursuant to the [KTCA] shall be commenced within the time period

6

provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action." (Emphasis added.)

The notice of claim requirement under K.S.A. 2017 Supp. 12-105b(d) is a jurisdictional prerequisite to suing a municipality under the KTCA. *Sleeth v. Sedan City Hospital*, 298 Kan. 853, Syl. ¶ 1, 317 P.3d 782 (2014).

Given that it is undisputed that Nash failed to give proper notice under K.S.A. 2017 Supp. 12-105b, we must determine the existence of two conditions precedent to the notice requirement: First, whether Nash's claims fall under the KTCA; and second, whether Blatchford is an employee of South Central. If both are answered in the affirmative, then Nash was required to give notice under K.S.A. 2017 Supp. 12-105b, and his failure to do so bars his claims. We will address each in order.

A.     *Did Nash's claims fall under the KTCA?*

At common law, the longstanding rule was that the State, as the sovereign, was immune from suit unless it consented. The Legislature provided that consent when it enacted the KTCA; now, subject to certain exceptions, liability is the rule and immunity the exception. *Fettke v. City of Wichita*, 264 Kan. 629, 633, 957 P.2d 409 (1998); see also K.S.A. 2017 Supp. 75-6103(a) (each governmental entity liable for damages caused by negligent acts of its employees acting within scope of employment). One exception is that claims based upon the rendering of professional services by a health care provider, such as the practice of medicine, are excluded from coverage under the KTCA. K.S.A. 2017 Supp. 75-6115(a).

K.S.A. 2017 Supp. 75-6115(c)(3) utilizes the health care provider definition from K.S.A. 40-3401(f): "a person licensed to practice any branch of the healing arts by the

7

state board of healing arts" and "a medical care facility licensed by the state of Kansas." K.S.A. 2017 Supp. 75-6115(c)(4) includes a hospital within the definition of a medical care facility contained in K.S.A. 65-425. It is uncontroverted that South Central is a municipal hospital and that Blatchford is a physician licensed to practice by the Board of Healing Arts; both are health care providers, suggesting, at first blush, that they fall under the exclusion to coverage under the KTCA.

But the same statute that excludes the rendering of professional services by a health care provider from the KTCA also lists six exceptions from this exclusion, one being any claim made against "a hospital owned by a municipality and the employees thereof." K.S.A. 2017 Supp. 75-6115(a)(2). Here, it is also undisputed that South Central is owned by a municipality; therefore, it would appear that any malpractice claim against South Central or its employees must fall under the KTCA. However, Nash argues that Blatchford, as a health care provider, cannot be an employee as defined by the KTCA because health care provider is not included within the definition of employee contained in K.S.A. 2017 Supp. 75-6102(d)(1), meaning that the exclusion from the KTCA should apply to Blatchford because he is a health care provider rendering professional services.

Nash is correct that K.S.A. 2017 Supp. 75-6102(d)(1) broadly lists a number of persons to be considered employees under the KTCA and does not include health care providers. But we disagree with Nash that the Legislature intended to exclude as employees all persons not specifically included in the statute. First, K.S.A. 2017 Supp. 75-6102(d)(2)(B) specifically excludes independent contractors as employees, suggesting that the list of employees contained in K.S.A. 2017 Supp. 75-6102(d)(1) is not exclusive. Second, K.S.A. 2017 Supp. 75-6102(d)(1)(A) specifically includes "employee" in its definition of employee, meaning the Legislature intended to provide a broad definition of the term. Thus, we reject Nash's contention that a health care provider such as Blatchford must be excluded from the definition of employee under the KTCA. Accordingly, Nash's claims against Blatchford fall within the KTCA if Blatchford is an employee of South

8

Central. Therefore, we must determine whether the district court properly found Blatchford to be an employee based on his contract with South Central.

B.     *Is Blatchford an employee or an independent contractor of South Central?*

As a preliminary matter, we note the parties dispute how we should review the district court's ruling that Blatchford was an employee of South Central. Nash argues that whether a person is an employee or an independent contractor is always a question of fact. Blatchford argues that if a written contract controls, then we are to exercise unlimited review over the district court's ruling whether the person is an employee or an independent contractor as a matter of law.

"The criteria for determining whether an employment relationship or, in the alternative, an independent contractor relationship exists vary under different contexts. . . . [T]here is no absolute rule for determining whether an individual is an independent contractor or an employee." *Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 270, 32 P.3d 1146 (2001).

> "'Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor. However, generally speaking, the question of whether an individual is an employee or an independent contractor is considered a question of fact for the jury or trier of facts.'" *McCubbin v. Walker*, 256 Kan. 276, 281, 886 P.2d 790 (1994) (quoting *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 [1991]).

Our Supreme Court recently directed:

> "'The interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review, including whether a written

9

instrument is ambiguous.' [An appellate court's] review is 'unaffected by the lower courts' interpretations or rulings.'

""""The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." If, on the other hand, the court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it. In addition,

""""[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. . . .

"'. . . But, if the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary declaratory judgment is inappropriate.' *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963-64, 298 P.3d 250 (2013)." *Trear v. Chamberlain*, 308 Kan. 932, 936-37, 425 P.3d 297 (2018).

Nash does not argue the written contracts between Blatchford and South Central are ambiguous. Instead, he argues that if we review the contractual language and the parties' intent under the 2008 contract and 2010 addendum, we would find that Blatchford is an independent contractor.

We agree with another panel of our court which dealt with the same issue and determined that its standard of review was unlimited because determination of whether the plaintiff was an employee or independent contractor could be determined by examining the relevant written agreement.

10

"The specific issue argued by Knorp is that the trial court erred in determining that Albert's written contract with the hospital made him an employee rather than an independent contractor. In this context, an appellate court may independently construe a written agreement to determine its legal significance. There are at least two Kansas Supreme Court cases holding that the question of whether one is an employee or independent contractor is generally a question of fact. However, in this case, an unambiguous written contract controls the employment relationship, and we conclude the interpretation of that agreement is properly a matter of law subject to unlimited review. [Citations omitted.]" *Knorp v. Albert*, 29 Kan. App. 2d 509, 512, 28 P.3d 1024, *rev. denied* 272 Kan. 1418 (2001).

Accordingly, we apply an unlimited standard of review to determine whether the district court correctly found, as a matter of law, that Blatchford was an employee under the contract.

Although our review focuses on the parties' contractual relationship, as discussed generally above, two statutes also provide a definition of employee that may impact our review. Because we first attempt "to discern the legislature's intent through the language enacted," our review starts there. *Whaley*, 301 Kan. at 196.

The KTCA, specifically, K.S.A. 2017 Supp. 75-6102(d)(1)(A), broadly defines an employee as:

"[a]ny officer, employee, servant or member of a board, commission, committee, division, department, branch or council of a governmental entity, including elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation and a charitable healthcare provider[.]"

K.S.A. 2017 Supp. 75-6102(d)(2)(B) largely excludes independent contractors as employees. K.S.A. 2017 Supp. 12-105a(h), which deals with claims against

11

municipalities, defines employee similarly to the KTCA as "any officer, employee, servant or member of a board, commission, committee, division, department, branch or council of a governmental entity, including elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." The statute also excludes independent contractors from its definition of employees: "'Employee' does not include an independent contractor working for a municipality under contract." But neither statute defines an independent contractor. Compare K.S.A. 2017 Supp. 75-6102(d) with K.S.A. 2017 Supp. 12-105a.

Kansas courts, however, have consistently defined an independent contractor as

"one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of the employer, except as to the results or product of his or her work. The primary test used by the courts . . . is whether the employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. An independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his own methods and who is subject to his employer's control only as to the end product or final result of his work. [Citation omitted.]" *Hartford*, 272 Kan. at 270-71.

But Kansas courts do not rely exclusively on the right to control test and apply other multifactor tests to make the determination of whether a person is an employee or an independent contractor. See, e.g., *Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 401-03, 250 P.3d 825 (2011) (explaining multifactor tests).

Nash argues that Blatchford is an independent contractor because he is the named insured on the malpractice insurance and because South Central has no control over how

12

and when Blatchford operates on patients. Nash relies on one contractual provision to support his argument. That contractual provision states:

> "6.     PROFESSIONAL RESPONSIBILITY. In the areas of diagnosis and treatment of patients, Doctor's professional responsibility shall be complete and Employer shall not, through its Board of Trustees or any of its officers or employees, direct, supervise or control Doctor in Doctor's professional care of any individual patient; provided, however, Employer shall not be prevented from establishing general rules governing the rendering of medical care to patients or relieving Doctor of the care of an individual patient."

Another panel of this court addressed a similar situation in *Knorp*. There, Knorp filed a lawsuit to recover damages against Albert for misdiagnosing her. The trial court granted Albert summary judgment because Knorp failed to provide the proper notice pursuant to K.S.A. 2000 Supp. 12-105b(d). Knorp appealed. The *Knorp* panel then reviewed the factors outlined in the Restatement (Second) of Agency § 220(2) (1958) used to determine if a person is an employee or an independent contractor:

> "'(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> "'(b) whether or not the one employed is engaged in a distinct occupation or business;
> "'(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> "'(d) the skill required in the particular occupation;
> "'(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> "'(f) the length of time for which the person is employed;
> "'(g) the method of payment, whether by the time or by the job;
> "'(h) whether or not the work is a part of the regular business of the employer;
> "'(i) whether or not the parties believe they are creating the relation of master and servant; and

13

"'(j) whether the principal is or is not in business.'" 29 Kan. App. 2d at 514.

Nash argues that we should find Blatchford is an independent contractor and points to *Brillhart v. Scheier*, 243 Kan. 591, 758 P.2d 219 (1988), for support.

There, a pastor—Scheier—was involved in an automobile accident with the plaintiffs, who sued both Scheier and, under a theory of respondeat superior, the Catholic Diocese of Wichita. The district court granted summary judgment for the diocese and held that Scheier was an independent contractor. On appeal, the plaintiffs argued the district court erred in granting summary judgment because a question of material fact existed for the jury to decide: Whether an employer-employee relationship existed between Scheier and the diocese.

A majority of our Supreme Court held that the district court correctly found Scheier was an independent contractor and the diocese was entitled to judgment as a matter of law. 243 Kan. at 597. Under the "'right to control test,'" the following facts supported that Scheier was an independent contractor: The diocese had no control over his day-to-day activities; while the diocese set his salary and could remove Scheier, Scheier had significant control over these areas; Scheier had control over the running of his parish; he performed duties as he saw fit; and the diocese required him to make only annual status and planning reports. While the majority also noted that some of the Restatement factors supported the Brillharts' position—specifically Scheier's long-term employment—the court also held that several other factors supported the diocese's position that the district court did not err in granting summary judgment: The diocese had no control or supervision over the details or completion of Scheier's work, which required a high level of skill and experience; Scheier had control over his workplace, provided his own supplies, and his salary came from parish proceeds. As applied to the circumstances of the case, Scheier drove his own car, paid for his car insurance, and was visiting a friend without the diocese's permission or request.

14

Blatchford argues we should compare his case to *Knorp* and find the district court did not err in finding that he is an employee of South Central. On appeal, Knorp argued Albert was an independent contractor, mainly relying on a single clause in Albert's contract prohibiting the hospital from directing, supervising, or controlling his professional care of patients. The panel rejected her argument and found, in part, that the provision might be required in every physician contract to address medical ethics concerns based on two federal court cases: *Quilico v. Kaplan*, 749 F.2d 480, 483-84 (7th Cir. 1984), and *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir. 1983). 29 Kan. App. 2d at 514-15. The panel concluded that "rather than relying on certain isolated provisions in the agreement, the status of a physician should be determined by careful attention to the entirety of the contractual agreement and to the intent of the parties." 29 Kan. App. 2d at 515.

The *Knorp* panel explained that a doctor who purchases malpractice insurance and pays his or her professional dues or fees is an independent contractor. When applying Albert's contract provisions to the Restatement factors, the panel found the fact that the hospital purchased Albert's malpractice insurance and gave him an allowance to pay for professional meetings and dues indicative that Albert was an employee. The panel held that the intent of the parties—based on the contractual language—showed Albert was an employee, in part, because the words "independent contractor" were not used in Albert's employment agreement. 29 Kan. App. 2d at 516-17.

Like the panel in *Knorp*, when applying the Restatement factors to Blatchford's 2008 contract and 2010 addendum, we find that Blatchford is an employee of South Central.

15

(1)     *Length of contract and method of payment*

The parties entered a long-term contractual relationship. Under the 2008 contract, South Central and Blatchford entered into an initial two-year term that would continue in one-year terms. The 2010 addendum became effective on July 1, 2010, and continues the agreement until June 30, 2019, subject to reviews for compensation and other benefits.

South Central pays Blatchford an annual salary with bonuses and requires him to work full time, or 40 hours per week, 52 weeks of the year subject to vacation time. The 2010 addendum also requires Blatchford to assume off-call and on-call duties at South Central. Blatchford receives benefits as a physician employee, has paid time off, and South Central must schedule his vacation or approved absences in a reasonable manner.

(2)     *The instrumentalities, tools, and place of work*

Under the contract, South Central provides Blatchford with facilities, equipment, supplies, and support staff—including receptionists and nurses. South Central reimburses Blatchford for some expenses, such as licensing fees, privileging fees, attendance at professional meetings, subscriptions to professional literature, and any reasonable and necessary professional expenses with advanced approval. South Central pays Blatchford's medical malpractice insurance at least up to the minimum amount required under Kansas law.

(3)     *Intent of the parties and whether the one employed is involved in a distinct occupation or business*

The 2008 contract supports the proposition that the parties intended to establish an employer-employee relationship. The contract expressly defines South Central as "Employer" and Blatchford as "Doctor." Moreover, the contract states that "rather than

commencing the private practice of medicine in Arkansas City, Kansas, as contemplated in the [2006 contract], Doctor now wishes to practice medicine as an employee of Employer." Under the contract, Blatchford also agreed to accept employment—subject to his being licensed in Kansas—"as a physician to carry out professional duties of the practice of medicine."

In addition, Blatchford's professional services are not distinct from South Central. South Central permits Blatchford to seek help from any other professional employee to diagnose and treat his patients, and Blatchford agrees to assist other employees. Blatchford must comply with South Central's rules and regulations and carry out and perform any of South Central's orders, directions, and policies which may be required from time to time. South Central provides Blatchford the facilities, equipment, supplies, and support staff. South Central has final authority over accepting patients and sets the fee amounts charged for professional services. While Blatchford must maintain patient medical records, all records remain South Central's property. All fees Blatchford receives are South Central's property, including fees received for work at other hospitals, "moonlighting," teaching, speaking engagements, consultations, etc. Finally, Blatchford cannot engage in any other gainful employment without South Central's prior consent, and he is subject to a noncompete clause if the relationship is terminated.

(4)     *Control over details*

Blatchford acknowledges that South Central provides him with independence on how and when he operates on patients but argues we should not find this fact dispositive for determining whether he is an independent contractor or an employee under the contract. We agree. As the *Knorp* panel held: "[S]tanding alone, the mere fact that the hospital had no right to control or supervise [the physician] in his 'professional care of any individual patient' was not sufficient to create an independent contractor relationship." 29 Kan. App. 2d at 515. Blatchford's argument mirrors the well-established

17

principle that "'interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners.'" *Trear*, 308 Kan. at 936.

Even when considering the specific provision alone, South Central maintains some control over Blatchford's treatment and care of his patients because South Central may create rules governing his work generally and may relieve Blatchford of his care of a patient. Other contractual provisions show South Central maintains some control over Blatchford's work. South Central has final authority over the amount of fees charged for his professional services and whether to accept a new patient, and the fees collected for Blatchford's services and the records created remain South Central's property. South Central also requires Blatchford to comply with its rules and regulations and to carry out any orders, directions, and policies. Finally, under his contract, Blatchford must engage in the practice of medicine to the best of his ability and within the community standards of his profession and he must work full time for the hospital. Based on a review of the contract as a whole, South Central does have some control over Blatchford's work.

While the parties in *Brillhart* did not review a written contract to determine if Scheier was an employee or an independent contractor, the Restatement requires no contractual or business relationship to make such determination. See Restatement (Second) Agency § 220, comment (1)b. Even without that distinction, *Brillhart* is distinguishable. Here, South Central has more control over Blatchford's work under the contract than the diocese had over Scheier's work. Specifically, though South Central does not exercise control over the details of Blatchford's highly skilled work, South Central has some control over his work generally. South Central has final authority over Blatchford's acceptance of a new patient and may remove a patient from his care; and South Central requires Blatchford to comply with the rules and regulations, work full time, obtain and maintain his privileges, and perform his work up to community professional standards and to the best of his ability. In addition, South Central has a long-

term contractual relationship with Blatchford; pays Blatchford an annual salary with bonuses; pays for his medical malpractice insurance; reimburses some of Blatchford's professional expenses and licensing dues; provides facilities, equipment, supplies, and support staff; and requires that all fees Blatchford receives and patient records he creates remain South Central's property.

When viewing all of the contractual provisions, we find that Blatchford is an employee of South Central. Because Blatchford is an employee of South Central, Nash's claims against him fall under the KTCA and Nash was required by K.S.A. 2017 Supp. 12-105b to file a written notice of claim before suing. Nash did not do so; therefore, his claims are barred.

C.      *Does K.S.A. 2017 Supp. 40-3403(h) abrogate all hospitals' vicarious liability for medical malpractice?*

Nash also argues that because K.S.A. 2017 Supp. 40-3403(h) abrogated all hospitals' vicarious liability for doctors in the medical malpractice context, the notice requirement in K.S.A. 2017 Supp. 12-105b(d) is meaningless and K.S.A. 2017 Supp. 40-3403(h) compels a finding that Blatchford is an independent contractor as a matter of law.

K.S.A. 2017 Supp. 40-3403(h) states:

> "A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund. The provisions of this subsection shall apply to all claims filed on or after July 1, 1986."

19

Interpreting K.S.A. 40-3403(h), our Supreme Court has held that if two health care providers are qualified for coverage under the Health Care Stabilization Fund (Fund) created by the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 et seq., then "K.S.A. 40-3403(h) absolves a health care provider not just from vicarious liability but from any responsibility, including independent liability, if the injured party's damages are derivative of and dependent upon the rendering of or the failure to render professional services by another health care provider." *Cady*, 298 Kan. 731, Syl. ¶¶ 1, 2. "'Vicarious liability' is a term generally applied to legal liability which arises solely because of a relationship and not because of any act of negligence by the person held vicariously liable for the act of another." *Bates v. Dodge City Healthcare Group*, 296 Kan. 271, Syl. ¶ 6, 291 P.3d 1042 (2013).

But Nash asserts no claims against South Central. As a result, this case does not involve another health care provider's potential vicarious liability for Blatchford's alleged negligence. Nash has sued Blatchford for his acts or omissions while performing surgery or when providing Nash's care and treatment. Assuming Blatchford qualifies as a health care provider under the Fund, K.S.A. 2017 Supp. 40-3403(h) does not prohibit a claim against one health care provider for his or her negligent acts. In addition, K.S.A. 2017 Supp. 40-3403(h) contains no notice provision to conflict with K.S.A. 2017 Supp. 12-105b(d) but eliminates some forms of relief only when two health care providers both have coverage under the Fund. Thus, K.S.A. 2017 Supp. 40-3403(h) does not apply here and does not conflict with K.S.A. 2017 Supp. 12-105b(d).

Nash also argues that the abrogation of vicarious liability under K.S.A. 2017 Supp. 40-3403(h) makes all physicians independent contractors by law. The argument strikes us as one in which the tail is wagging the dog.

Nash's argument appears to rest on the underlying policy of vicarious liability which is also called imputed negligence and respondeat superior. See *Bair v. Peck*, 248

Kan. 824, Syl. ¶ 2, 811 P.2d 1176 (1991) ("The liability of a principal for the tortious acts of his agents and the liability of a master for the tortious acts of his servant are both grounded upon the doctrine of respondeat superior and are commonly referred to as vicarious liability."). As our Supreme Court has explained:

> "The phrase 'imputed negligence' refers to the doctrine which places upon one individual responsibility for the negligence of another. The doctrine of imputed negligence, or respondeat superior, has its origin in public policy. It is elemental that every person conduct his business so as not to cause injury to others, and if he conducts business through others, he is bound to manage them so third persons are not injured by the others while they are doing the principal's business within the scope of their authority. The doctrine is a 'fiction of the law,' not favored in this state, which is limited to master/servant (employer/employee) and joint enterprise relationships. These are relationships in which the potential respondents have sufficient control and responsibility for the actions of others to justify holding them liable for their actions. [Citations omitted.]" *Brillhart*, 243 Kan. at 593.

Essentially, Nash argues that because a second health care provider cannot be vicariously liable under K.S.A. 2017 Supp. 40-3403(h) for negligence by a physician who is also covered under the Fund—whether the physician is an employee or independent contractor—then physicians are always independent contractors by law. We disagree because one does not flow from the other. Just because the Legislature abrogates the liability of the principal for the acts of its agent in a particular context does not mean that the agent cannot be an employee of the principal. As we have explained, the contract between Blatchford and South Central here supports the single conclusion that Blatchford is an employee, and the Legislature's decision to eliminate South Central's vicarious liability for any harm that may have resulted from Blatchford's rendering of professional services to Nash is immaterial to that analysis. The district court did not err in concluding that Blatchford was an employee under the contract as a matter of law.

21

II.     DID THE DISTRICT COURT ERR IN APPLYING THE 2015 AMENDMENTS TO K.S.A. 12-105b(d) TO NASH'S CLAIM?

Effective July 1, 2015, the Kansas Legislature amended the notice of claim statute, K.S.A. 12-105b(d). L. 2015, ch. 28, § 2. Of particular importance to us, the prior version of K.S.A. 12-105b did not specifically apply to employees of municipalities. See K.S.A. 12-105b(d). Nash argues the district court erred in retroactively applying the 2015 amendments to K.S.A. 12-105b because his claims accrued before the effective date of those amendments.

> "In general, 'a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.' But a 'statutory change [that] does not prejudicially affect the substantive rights of the parties and is merely procedural' in nature may apply retroactively. 'Procedural laws relate to the '"machinery for carrying on the suit, including pleading, process, evidence, and practice' and 'the mode or proceedings by which a legal right is enforced, that which regulates the formal steps in an action.'"' In contrast, '[s]ubstantive laws give or define the right, give the right or denounce the wrong, or create liability against a defendant for a tort committed.' [Citations omitted.]" *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841-42, 367 P.3d 1252 (2016).

Nash relies on a federal district court case—*Richard v. City of Wichita*, No. 15-1279-EFM-KGG, 2016 WL 5341756, at *13 (D. Kan. 2016) (unpublished opinion)—to argue he has a vested right in his claim filed within the two-year statute of limitations and that the district court cannot retroactively apply the 2015 amendments to K.S.A. 12-105b(d) to destroy his claim. Unfortunately, Nash failed to attach a copy of *Richard*, an unpublished federal decision, to his brief as required under Kansas Supreme Court Rule 7.04(g)(2)(C) (2018 Kan. S. Ct. R. 45), so we could decline to consider his argument. See *In re M.G.*, No. 108,637, 2013 WL 2992927, at *6 (Kan. App. 2013) (unpublished opinion).

22

This failure notwithstanding, Nash's reliance on *Richard* is misplaced. For background, several Wichita police officers shot Richard's husband on February 25, 2014, striking his body 16 times. Though he survived the shooting, he later committed suicide. Richard filed a notice of claim with the City under K.S.A. 12-105b(d) on February 19, 2015. The City denied her claim, and it was undisputed that Richard did not give notice to the individual officers. On September 16, 2015, Richard sued the officers, in part, and asserted battery claims. The officers argued the district court should dismiss the battery claims as time-barred based on the expiration of the one-year statute of limitations, but Richard argued the district court should retroactively apply K.S.A. 12-105b(d) as amended in 2015 to toll the one-year statute of limitations against the officers. The district court refused to apply the 2015 amendments retroactively and held:

> "'[O]nce a plaintiff's claim is barred by the statute of limitations, it cannot be revived' by the retroactive application of a statute. Therefore, if the claims against the individual officers were time-barred before § 12-105b(d) was amended, then the Court cannot apply the amendment retroactively. On December 24, 2014, *Whaley* held that § 12-105b(d) did not apply to individual municipal employees. The current version of the statute, that includes municipal employees, did not go into effect until July 1, 2015. So from December 24, 2014, until July 1, 2015, a claimant's notice to a municipality under § 12-105b(d) did not toll the statute of limitations with regards to individual municipal employees. Therefore, Plaintiff's notice to the City on February 19, 2015, did not toll the statute of limitations with regards to the officers. And so on February 25, 2015, the statute of limitations for a battery action against the individual officers had expired: the officers had a vested right in the statute of limitations defense. The Court will not retroactively apply a statute that would modify 'a vested right of defense that existed prior to the effective date of the procedural statute extending the statute of limitations.'" 2016 WL 5341756, at *13.

Nash's vested right claim differs from the officers' claim in *Richard*. Nash has no vested right in a statute of limitations defense. Instead, Nash is seeking to pursue his claim filed within the statute of limitations and avoid a dismissal from his failure to

23

comply with the notice of claim statute that was amended after his claim accrued. Thus, *Richard* does not support Nash's argument.

Our Supreme Court reviewed whether to apply an amendment to the K.S.A. 12-105b(d) notice requirements under similar circumstances to our case in *Stevenson v. Topeka City Council*, 245 Kan. 425, 781 P.2d 689 (1989). In *Stevenson*, the amended statute "became effective on July 1, 1987—prior to the time Stevenson filed her petition on July 21, 1987, but subsequent to July 23, 1985, the date her tort claim accrued." 245 Kan. at 427. Our Supreme Court denied a similar vested right defense argument as misplaced but reasoned that there was merit in the claim that retrospective operation of the statute would modify Stevenson's vested right. The *Stevenson* court found that 23 days was not a reasonable time for Stevenson to comply with the notice requirements and refused to apply the 1987 amendments retroactively. 245 Kan. at 429-30. Our Supreme Court held that "[a] procedural statute will not be given retrospective application where a party does not have a reasonable time after the enactment of the statute to comply with notice requirements before the suit is barred." 245 Kan. 425, Syl. ¶ 4.

Applying *Stevenson*, we reject Nash's argument because he had a reasonable amount of time after the enactment of the 2015 amendments to comply with the notice requirements. Nash filed his petition on January 5, 2017; his claim accrued on January 9, 2015. The 2015 amendments became effective July 1, 2015, after Nash's claim accrued but before he filed his petition. See L. 2015, ch. 28, § 2. Nash had about one and a half years after the enactment of the 2015 amendments to comply with the notice requirements before his suit was barred. Thus, because Nash had a reasonable time to comply with the notice of claim requirement, the district court did not err in applying the 2015 amendments to Nash's claim.

III. DO THE 2015 AMENDMENTS TO K.S.A. 12-105b(d) DENY MEDICAL MALPRACTICE VICTIMS OF DOCTORS EMPLOYED AT MUNICIPAL HOSPITALS EQUAL PROTECTION UNDER THE LAW?

In his final claim, Nash argues that the 2015 amendments to K.S.A. 12-105b(d) deny medical malpractice victims of municipally employed physicians equal protection under the law.

"The Fourteenth Amendment to the United States Constitution guarantees equal protection of the laws, and the Kansas Constitution Bill of Rights § 1 provides virtually the same protection. When the constitutionality of a statute is challenged on the basis of an equal protection violation, courts must construe the statute as constitutional if there is any reasonable way to do so. Consequently, in reviewing a statute we presume that it is constitutional and resolve all doubts in favor of its validity. An appellate court conducts unlimited review of this question because it presents a question of law.

"The first step of an equal protection analysis is to determine the nature of the legislative classifications and whether the classifications result in arguably indistinguishable classes of individuals being treated differently. Only if there is differing treatment of similarly situated individuals are the federal and Kansas Equal Protection Clauses implicated. . . .

"After determining the nature of the legislative classifications, a court examines the rights which are affected by the classifications. The nature of the rights dictates the level of scrutiny to be applied. Federal and Kansas courts have long delineated three levels of scrutiny in equal protection cases: (1) the rational basis standard to determine whether a statutory classification bears some rational relationship to a valid legislative purpose; (2) the heightened or intermediate scrutiny standard to determine whether a statutory classification substantially furthers a legitimate legislative purpose; and (3) the strict scrutiny standard to determine whether a statutory classification is necessary to serve some compelling state interest. . . .

"The final step of the analysis requires determining whether the relationship between the classifications and the object desired to be obtained withstands the applicable level of scrutiny. [Citations omitted.]" *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 315-16, 255 P.3d 1186 (2011).

Nash makes a three-pronged argument: (1) K.S.A. 2017 Supp. 12-105b(d) treats medical malpractice victims of municipally employed physicians different than victims of nonmunicipally employed physicians; (2) the rational basis standard applies to his equal protection challenge; and (3) K.S.A. 2017 Supp. 12-105b(d) lacks any rational basis in law because requiring notice of a claim to a municipal hospital in which it cannot be held vicariously liable furthers no legitimate governmental interest.

Blatchford does not contest Nash's first two arguments, so we examine Nash's equal protection challenge under the rational basis standard. See 292 Kan. at 316. But Blatchford argues that the K.S.A. 2017 Supp. 12-105b(d) notice of claim requirement serves a legitimate purpose, based on reasoning in *King v. Pimentel*, 20 Kan. App. 2d 579, 590, 890 P.2d 1217 (1995), because K.S.A. 2017 Supp. 12-105b affords a municipality 120 days to investigate a claim, obtain legal advice and conduct discovery, and approve or deny a claim before a suit is filed.

Under a rational basis review,

"[w]ith regard to the evidence, '[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification.' '"[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." [Citations omitted.]' Therefore, a rational basis will be found for a classification 'if any state of facts reasonably may be conceived to justify it.' [Citations omitted.]" *Christopher v. State*, 36 Kan. App. 2d 697, 709, 143 P.3d 685 (2006).

26

Even if Nash's claim meets the first two steps, whether a municipal hospital can be vicariously liable for a municipally employed physician's malpractice does not negate the legitimate government interest in giving a municipal hospital notice of a claim against one of its employees. Notice statutes do not deny equal protection because "'the requirement that claimants give notice of their claim is a reasonable restriction that applies equally to all persons wishing to sue the government.'" *Phillips v. Humble*, 587 F.3d 1267, 1273-74 (10th Cir. 2009). In *U.S.D. No. 457 v. Phifer*, 729 F. Supp. 1298, 1306 (D. Kan. 1990), the federal district court held that K.S.A. 12-105b did not offend the plaintiff's due process and equal protection rights: "The purpose of this provision is obviously to afford the public entity the opportunity to investigate the claim, to assess its liability, to attain settlement, and to avoid costly litigation. Therefore, the legislative classification of claims against public entities for special notice requirements serves a rational purpose." While South Central's concern about costly litigation is greatly mitigated by the fact that it cannot be held liable for Blatchford's actions, it does have legitimate competency and patient care interests which justify notice. See K.S.A. 2017 Supp. 65-4915 (peer review process). Nash's equal protection claim lacks merit.

In conclusion, the unambiguous language of K.S.A. 2017 Supp. 12-105b(d) requires a person to comply with the notice of claim requirement when bringing any suit under the KTCA against a municipality, a municipal employee, or both. Although Nash's malpractice claim involved the rendering of professional services by a health care provider, Nash's suit was not excluded as a claim under the KTCA because Nash sued an employee of a hospital owned by a municipality. Accordingly, the district court only had jurisdiction to hear Nash's malpractice claims against Blatchford if proper notice had been given. As it is undisputed that Nash never filed a notice of claim under K.S.A. 2017 Supp. 12-105b, Nash's claims are barred. The district court did not err in granting summary judgment in favor of Blatchford.

Affirmed.

ATCHESON, J., concurring:  I concur in the result affirming the Cowley County District Court's summary judgment in favor of Dr. Patrick T. Blatchford, M.D., the defendant in this medical malpractice action. Plaintiff Aaron Nash did not give notice as required under K.S.A. 2017 Supp. 12-105b(d), a failure the Kansas Supreme Court has determined to be a jurisdictional bar to actions governed by the Kansas Tort Claims Act regardless of their substantive merit. See *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 868, 317 P.3d 782 (2014) ("[S]ubstantial compliance with K.S.A. 2012 Supp. 12-105b[d] is necessary before a court may obtain subject matter jurisdiction over the claim."). Given the procedural posture of the case, Nash no longer has a justiciable claim because of the lack of notice.

In affirming the district court, the majority opinion is needlessly convoluted in some respects. For example, the Kansas Tort Claims Act plainly applies to medical malpractice claims against municipally owned hospitals and their employees. K.S.A. 2017 Supp. 75-6115(a)(2). Everybody agrees South Central Kansas Regional Medical Center is a municipal hospital, so the KTCA governs if Dr. Blatchford was an employee of the hospital. As I discuss next, he was. The majority takes an unusually circuitous route getting to that result.

In other respects, the majority opinion seems to misstate the governing legal principles but still arrives at the correct conclusions. Whether Dr. Blatchford was an employee of the medical center or an independent contractor entails a critical issue. If he were an independent contractor, the KTCA would not apply to the medical malpractice action and Nash would not have had to give notice under K.S.A. 2017 Supp. 12-105b(d). A multifaceted test guides the inquiry into the status of a service provider as an employee of an employer or as an independent contractor. In general terms, an employer has the authority to control the conditions under which an employee works and to direct the manner in which the work will be done in an ongoing relationship. An independent

28

contractor, as the name suggests, retains considerable latitude as to how the work—typically a discrete project—will be handled and commonly retains the right to undertake projects for others.

The majority incorrectly suggests that if the parties have an unambiguous written contract, the contractual terms alone determine the character of the relationship as employer-employee or as independent contractor. In turn, the majority mistakenly concludes summary judgment is appropriate here because the interpretation of an unambiguous contract is a question of law. Dr. Blatchford and the medical center had a detailed contract governing their work relationship. But the contractual terms are not dispositive.

The nature of the service relationship is a question of fact. *McCubbin v. Walker*, 256 Kan. 276, 281, 886 P.2d 790 (1994). Juries ordinarily decide fact questions. But a district court may grant summary judgment to a defendant if the material facts are undisputed or any disputes are resolved in the plaintiff's favor and those circumstances show either that no reasonable jury could find for the plaintiff or that the defendant is otherwise entitled to judgment as a matter of law. See *Lumry v. State*, 305 Kan. 545, 566, 385 P.3d 479 (2016) (summary judgment appropriate when "'no genuine issue as to any material fact'" and those facts show moving party "'entitled to judgment as a matter of law'") (quoting K.S.A. 2015 Supp. 60-256[c][2]); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 276, 261 P.3d 943 (2011) ("Should the evidence taken in the best light for a plaintiff nonetheless fail to establish a basis for a jury to return a verdict for that plaintiff, the court may enter a summary judgment for the defendant."). The district court has to examine all of the material facts the parties have identified before granting summary judgment.

To be sure, a contract between the parties will provide highly relevant evidence bearing on whether the service provider stands as an employee or an independent

contractor of the service recipient. An especially detailed contract, such as Dr. Blatchford had with the medical center, may be particularly illuminating on the relationship. But a written contract does not squeeze out other relevant evidence, contrary to the majority's suggestion. Moreover, a contractual designation of the service provider as an employer or an independent contractor is not legally determinative of the actual relationship. See *Atchison v. Boone Newspapers, Inc.*, 981 So. 2d 427, 431 (Ala. Civ. App. 2007); *SAIF Corp. v. DCBS*, 250 Or. App. 360, 371, 284 P.3d 487 (2012). In short, a written contract is not the exclusive source of evidence as to whether one party is an employee or an independent contractor of the other.

In any given case, the parties might actually deal with each other in a way different from the contractual language or the contract might be silent on various considerations material to categorizing the relationship as employer-employee or independent contractor, so evidence outside the contract can be considered. See *Heyen v. Hartnett*, 235 Kan. 117, Syl. ¶ 4, 679 P.2d 1152 (1984) (later conduct of parties to contract "given great weight" in construing their agreement); *Sokol & Associates, Inc. v. Techsonic Industries, Inc.*, 495 F.3d 605, 610 (8th Cir. 2007) (later conduct of parties may show implicit modification of contract) (applying Minnesota law); 17A Am. Jur. 2d Contracts § 502 (parties may vary terms of contract through their later course of conduct). For example, a contract might say nothing about to the right of the service provider to work for others—a consideration in determining if the provider is an employee or an independent contractor. Especially in the absence of a pertinent contractual provision, a court ought to consider the parties' actions or other extrinsic evidence on that factor. The majority's approach seems to direct a district court or reviewing appellate court to discount entirely a factor left unaddressed in an unambiguous written contract.[*]

[*]Just why the majority takes that view is not entirely clear. The interpretation of the clear terms of a written contract presents a question of law for the district court in the first instance. And the parties may not introduce evidence of their negotiations—parol

30

evidence—to alter those terms. But the issue here isn't the meaning of the contract itself; it is the business relationship between Dr. Blatchford and the medical center. Their contract is simply one piece of evidence of that relationship.

In a particular case, the parties could stipulate that their contract entails the only relevant evidence of their business relationship. The courts would be limited to that stipulated universe of evidence. Likewise, if the parties submit no other evidence for the courts' consideration, the contractual terms necessarily govern. The reason, however, would not be a rule of law confining evidence on the nature of a service relationship to a written contract but the decision of the parties to limit the evidence to the contract.

Here, Nash drew on the written contract and evidence of how the medical center dealt with healthcare professionals who were independent contractors. But taking all of that evidence in the best light for Nash, Dr. Blatchford was unquestionably an employee of the medical center. The medical center paid him a salary in exchange for what constituted a fulltime job. The medical center set the amount of his vacation and other leave time. Dr. Blatchford could not undertake any outside work without the medical center's approval, and he had to turn over any remuneration to the medical center. Dr. Blatchford did not maintain an independent place of employment where he saw patients unconnected to the medical center. All of that, along with the rest of the evidence viewed favorably to Nash, establishes the medical center and Dr. Blatchford had an employer-employee relationship. The district court, therefore, appropriately tackled the issue on summary judgment and appropriately found Dr. Blatchford to be an employee of the medical center, triggering the notice requirements of K.S.A. 2017 Supp. 12-105b(d).

Nash has tried to make much of a provision in the contract reserving to Dr. Blatchford "complete" control over the "professional care of any individual patient." But an employee's exercise of professional judgment within a specialized field in performing his or her duties for an employer does not convert him or her into an independent contractor. See *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989) (physician's exercise of professional judgment not determinative of status as independent contractor under Federal Tort Claims Act); *National Optical Stores, Co. v. Bryant*, 181 Tenn. 266,

31

270-71, 181 S.W.2d 139 (1944) (physicians and other skilled workers or "artisan employees" not rendered independent contractors merely because they exercise "professional skill" in their work without strict direction when employer retains control over other aspects of relationship); *McDonald v. Hampton Training School for Nurses*, 254 Va. 79, 81, 486 S.E.2d 299 (1997) (exercise of professional judgment does not make physician independent contractor of hospital as matter of law; totality of circumstances in case presented jury question). Nash's argument proves too little and would indiscriminately turn employees with specialized skills, such as physicians, into independent contractors when they otherwise are not.

The majority also takes a skewed approach in analyzing Nash's equal protection claim directed at the notice requirement in K.S.A. 2017 Supp. 12-105b(d). If an injured party has a potential action under the KTCA against either a municipality or an employee of a municipality, the party must file a notice with the municipality and give the municipality an opportunity to review the claim before filing suit. K.S.A. 2017 Supp. 12-105b(d). A party with a potential claim for injuries against a private entity or its employee has no obligation to give notice before suing. Nash contends that creates an unconstitutional division between victims of medical malpractice committed by physicians who are public employees and victims of negligent physicians who are not. He relies on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 1 of the Kansas Constitution Bill of Rights. To the extent Section 1 secures equal protection rights, the Kansas Supreme Court has recognized those rights to be coterminous with the Equal Protection Clause. See *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005).

The Equal Protection Clause prevents state and local governments from treating groups of people differently, whether through legislative enactment or other policies and practices, without some justification. See *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("Our equal protection

32

jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 [1961]); *Reed v. Reed*, 404 U.S. 71, 75-76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971) ("The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute."); *Jurado v. Popejoy Constr. Co.*, 253 Kan. 116, 123, 853 P.2d 669 (1993) ("[E]qual protection requires . . . that legislative classifications be reasonable, not arbitrary, and that they be justified by legitimate legislative objectives."). The nature of the classification or division dictates the importance of the justification the governmental entity must advance for its action. The United States Supreme Court has recognized three levels of review for equal protection challenges that correspond to the interests implicated in the classification: strict scrutiny if a fundamental right or a suspect class, such as race or religion, is implicated; intermediate scrutiny if a quasi-suspect class, such as gender, is implicated; and rational basis for classifications that otherwise deal with economic or social regulation of groups.

The Court recognizes the first step in an equal protection analysis entails identifying the proper standard or level of review. Having identified the standard, the reviewing court then applies that standard to evaluate the constitutional propriety of the governmental classification in light of the regulatory purposes or objectives. See *Armour v. City of Indianapolis*, 566 U.S. 673, 678-82, 132 S. Ct. 2073, 182 L. Ed. 2d 998 (2012); *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 906 & n.6, 106 S. Ct. 2317, 90 L. Ed. 2d 899 (1986) (plurality); 476 U.S. at 924 (O'Connor, J., dissenting, joined by Rehnquist, J., and Stevens, J.); *Dunn v. Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). In *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973), the Court outlined the appropriate approach to an equal protection challenge:

"We must decide, first, whether the Texas system of financing public education operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. . . . If not, the Texas scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute [a] . . . violation of the Equal Protection Clause of the Fourteenth Amendment."

In recent years, the Kansas Supreme Court has engrafted an otherwise unfounded preliminary determination onto the accepted analytical model by requiring a reviewing court to first find the challenged legislation creates "arguably indistinguishable classes of individuals being treated differently." *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 315-16, 255 P.3d 1186 (2011). The court uses that as a gatekeeping requirement. So if the classes created are not "similarly situated," there can be no equal protection violation and no need to identify a level of review. 292 Kan. at 315-16. But the inquiry has no anchor in established equal protection jurisprudence. See *State v. Kelsey*, 51 Kan. App. 2d 819, 833-37, 356 P.3d 414 (2015) (Atcheson, J., concurring).

The majority—incorrectly, in my view—applies the gatekeeper requirement. We are obligated to construe federal constitutional rights as the United States Supreme Court directs. See *State v. Sharkey*, 299 Kan. 87, 93, 322 P.3d 325 (2014) ("[D]ecisions of the United States Supreme Court control our application of rights guaranteed by the United States Constitution."); *State v. Althaus*, 49 Kan. App. 2d 210, 216, 305 P.3d 716 (2013) (recognizing United States Supreme Court as "final arbiter of Fourth Amendment jurisprudence"). Our analysis, therefore, should begin with an identification of the level of review. The majority passes Nash through the "similarly situated" gate, so its analytical error did not prejudice him.

The majority goes on to suggest Nash has made three equal protection arguments by asserting K.S.A. 2017 Supp. 12-105b(d) draws a statutory distinction between victims

of medical malpractice committed by physicians employed by government entities and victims of private sector physicians, the statutory classification invokes rational basis review, and the classification lacks a rational basis. Those are really part and parcel of a single equal protection challenge. Dr. Blatchford doesn't dispute the notice statute creates a classification of injured parties based on the alleged wrongdoer's status as a public or private employee and a rational basis analysis governs the equal protection claim.

Nash, however, incorrectly defines the classification created in K.S.A. 2017 Supp. 12-105b(d), since the statute requires notice to a municipality of a claim against any of its employees, not just physicians or healthcare providers. The correct constitutional question is whether the division between municipal employees, on the one hand, and private sector employees, on the other, coupled with the notice requirements for the public employees has a rational basis in advancing some recognizable governmental objective.

The rational basis test is exceptionally deferential to upholding legislative line-drawing to accomplish social or economic goals. A government classification survives rational basis review if "'a plausible policy reason'" supports the scheme and it is not so removed from that reason as to result in an "'arbitrary or irrational'" distinction. *Fitzgerald v. Racing Assn. of Central Iowa*, 539 U.S. 103, 107, 123 S. Ct. 2156, 156 L. Ed. 2d 97 (2003) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11-12, 112 S. Ct. 2326, 120 L. Ed. 2d 1 [1992]); see *Heller v. Doe*, 509 U.S. 312, 319-20, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993); *State v. Cheeks*, 298 Kan. 1, 9, 310 P.3d 346 (2013). The statute or other regulation may be upheld for any justifiable purpose; the purpose need not be the one that prompted its adoption. See *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Estate of Kunze v. Commissioner of Internal Revenue*, 233 F.3d 948, 954 (7th Cir. 2000). The fit between the statute and the purpose may be inexact, meaning the legislation need not be tailored to

35

accomplish the goal. *Heller*, 509 U.S. at 320-21 ("an imperfect fit between means and ends" acceptable under rational basis review).

The statutory notice requirement extends to all municipal employees, not just physicians, and it is rationally related to at least two legitimate goals. First, under the KTCA, municipalities must indemnify employees who while acting within the scope of their duties negligently cause injuries to third parties. K.S.A. 75-6109. Even if the injured party intends to sue only the employee, he or she still must give notice to the municipality, allowing the government entity to promptly investigate and pursue settlement on behalf of its employee—avoiding indemnification liability. That is fully consistent with the underlying purpose of the notice requirement in K.S.A. 2017 Supp. 12-105b(d). See *Sleeth*, 298 Kan. 853, Syl. ¶ 3. Although the notice requirement sweeps up physicians employed at municipal hospitals and K.S.A. 2017 Supp. 40-3403(h) may insulate those municipalities from vicarious liability in medical malpractice actions, that merely makes K.S.A. 2017 Supp. 12-105b(d) an inexact means of accomplishing its ends. Under a rational basis review, the statute does not amount to an equal protection violation because of its inexactness.

Second, the notice requirement necessarily gives municipalities early warning of potentially incompetent or otherwise poorly performing employees whose laxity may have caused harm to third parties. Again, the municipality may investigate and, if necessary, take appropriate remedial steps to avoid recurrent mishaps. That sort of alert may be particularly important with government employees in jobs directly affecting public safety or public welfare, including physicians and other healthcare practitioners. Early notice might be considered especially appropriate as to government employees paid through tax dollars. Conversely, as Nash suggests, persons injured by physicians in the private sector do not have to give notice to the employers before filing actions for damages. But, contrary to Nash's suggestion, that does not render K.S.A. 2017 Supp. 12-105b(d) arbitrary or irrational. The statute may be underinclusive in that a comparable

36

notice-of-negligence requirement arguably would reflect sound public policy for private sector hospitals or medical groups. The scope of the notice requirement bears on the fit between means and ends rather than a lack of rational connection between notice and an identifiable goal.

The harsh consequences that may result from the failure to give notice in conformity with K.S.A. 2017 Supp. 12-105b(d)—as this case illustrates—would not appear to implicate equal protection rights under a rational basis analysis. The notice requirement promotes identifiable (and worthwhile) objectives if followed, and that is constitutionally sufficient for equal protection purposes. The parties have not suggested otherwise.

Consistent with the points I have outlined here, I concur in affirming the district court's entry of summary judgment for Dr. Blatchford.