(28 P.3d 1024)

No. 85,317

INA KNORP, *Appellant*, v. DR. STEVEN E. ALBERT, D.O., *Appellee*.

Opinion filed July 27, 2001.

*James T. McIntyre*, of Law Offices of James T. McIntyre, of Wichita, for the appellant.

*James Z. Hernandez* and *Peter G. Collins*, of Woodard, Hernandez, Roth & Day, LLC, of Wichita, for the appellee.

Before RULON, C.J., LEWIS, J., and STEPHEN D. HILL, District Judge, assigned.

LEWIS, J.: This lawsuit was filed by Ina Knorp against Steven E. Albert, D.O., to recover damages caused when Albert allegedly misdiagnosed her condition as a diabetic episode when she had, in fact, suffered a stroke. The trial court granted summary judgment in favor of Albert, finding that Knorp had failed to give notice under K.S.A. 2000 Supp. 12-105b(d) to Albert's employer. Knorp appeals from the decision granting summary judgment in favor of Albert.

The controlling issue on appeal is whether Albert was an employee of the Harper Hospital District or an independent contractor. If he was an employee of the hospital, the trial court was correct. If, on the other hand, Albert was an independent contractor, the trial court's holding was erroneous. The question of Albert's negligence and the details of his treatment of Knorp are irrelevant on appeal, and those facts will not be reviewed.

Our focus is on the procedural course this case has taken. That course is somewhat complex and is of substantial importance in resolving the issues presented. Knorp filed two lawsuits. The first action was filed in 1998 and will be referred to as the "1998 lawsuit." The second action was filed in 1999 and is the action on appeal to this court. That action will be referred to as the "1999 lawsuit."

The issues on appeal cannot be resolved without turning our attention first to the 1998 lawsuit. Among the allegations set forth in that action was the following:

"10.   Harriet Fox, Phyllis Shirk, Tom Giggy, Ken Salters and Kenna Teal, as directors and on behalf of Hospital District No. 5 of Harper County, Kansas, *that entity is the employer of Dr. Steven E. Albert,* and is responsible in response of superior [*sic*] for all damages caused by the fault of Dr. Steven E. Albert. In addition, these Defendants were negligent in ensuring that Dr. Steven E. Albert in a timely fashion examined all patients admitted to the Harper Hospital Medical

Clinic on an emergency basis and that he was a competent physician." (Emphasis added.)

Obviously, the 1998 action was premised on the basis that Albert was an employee of the hospital. It named the directors of the hospital as defendants and sought recovery against the hospital via the doctrine of respondeat superior or on the theory of negligent supervision. The hospital, in responding to Knorp's allegations, alleged in its answer: "5. Answering the allegations contained in paragraphs 5, 6, 7, 9 and 10, of plaintiff's Petition, the same are expressly denied. These defendants expressly deny that they were negligent in any regard."

Albert filed a motion to dismiss the 1998 lawsuit on the ground that Knorp had failed to give the required notice to the hospital under K.S.A. 2000 12-105b(d). That statute refers to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*, and requires that prior to filing suit against a municipality based on the negligence of one of its employees, written notice must be given to the municipality at least 120 days prior to the filing of a lawsuit. The parties appear to agree that the hospital was a municipality under K.S.A. 12-105a(a) and that Knorp had failed to give it the notice required by 12-105b(d).

Knorp apparently realized the error of her ways and before the trial court had an opportunity to act on the motion to dismiss, moved the court for an order dismissing the 1998 action without prejudice. This motion was granted, and Knorp filed the 1999 lawsuit within the 6-month period required by K.S.A. 60-518.

In 1999, Knorp filed the current action. Unaccountably, Knorp again made no effort to comply with 12-105b(d). Instead, she redrew her action, eliminated the directors of the hospital as defendants, and named Albert in his individual capacity only, inferring that he was an independent contractor of the hospital and not an employee. Albert again moved the court for summary judgment, contending that he was, in fact, an employee of the hospital and that no notice had been given under 12-105b(d). In response, Knorp argues that no notice was necessary since Albert was an independent contractor. She further maintained that Albert had

either waived the right to raise the failure to give notice or was estopped to raise that issue because of the position he had taken in the 1998 litigation.

The trial court found neither of Knorp's arguments persuasive and granted Albert's motion for summary judgment. The propriety of granting summary judgment to Albert is the subject of this appeal.

## WAS ALBERT AN EMPLOYEE OF THE HOSPITAL OR AN INDEPENDENT CONTRACTOR OF THAT ENTITY FOR THE PURPOSES OF THE KANSAS TORT CLAIMS ACT?

Our standard of review for summary judgment in cases of this nature is well established:

"The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

The specific issue argued by Knorp is that the trial court erred in determining that Albert's written contract with the hospital made him an employee rather than an independent contractor. In this context, an appellate court may independently construe a written agreement to determine its legal significance. *Anderson v. Employers Mutual Casualty Ins. Co.*, 27 Kan. App. 2d 623, 629, 6 P.3d 918 (2000). There are at least two Kansas Supreme Court cases holding that the question of whether one is an employee or independent contractor is generally a question of fact. See *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 261, 891 P.2d 435 (1995); *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991). However, in this case, an unambiguous written contract controls the employment relationship, and we conclude the interpretation of that agreement is properly a matter of law subject to unlimited review.

As we indicated earlier, no one seriously questions whether the hospital is a municipality under K.S.A. 12-105a(a). That being the

case, a tort claimant against a municipality on a claim covered by the KTCA must give the municipality notice of the claim and 120 days to either settle or deny the claim. On its face K.S.A. 2000 12-105b(d) only applies to municipalities and says nothing about having application to the employees of the municipalities. Despite this fact, we held in *King v. Pimentel,* 20 Kan. App. 2d 579, 589, 890 P.2d 1217 (1995), that 12-105b(d) requires notice to the municipality *even when the lawsuit only names municipal employees acting within the scope of their employment.* The KTCA applies to both municipal entities and employees of municipal entities acting within the scope of their employment. K.S.A. 2000 Supp. 75-6104.

Certain claims which are based on the rendering or failure to render professional services by health care providers are excluded from coverage under the KTCA by K.S.A. 75-6115. However, there are five exceptions to this exclusion, and one of those exceptions is applicable to this case and that is "a hospital owned by a municipality and the employees thereof." K.S.A. 75-6115(a)(2). The KTCA has full applicability in the instant matter and includes a "governmental entity or an employee acting within the scope of the employee's employment."

Obviously an independent contractor is not an employee. Indeed, the KTCA definition of employee excludes independent contractors. K.S.A. 2000 Supp. 75-6102a(d). The result is, as pointed out earlier, if Albert is or was an independent contractor, then the KTCA does not apply to him, and the trial court's decision was erroneous.

On the issue of Albert's status, the trial court held that he was an employee within the definition of K.S.A. 2000 Supp. 75-6102a(d). In general, the test to be applied was set out by the Supreme Court in *Falls v. Scott,* 249 Kan. at 64 as follows:

"An independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the results or product of his work. The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the

control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. [Citation omitted.]"

In addition to the general rule, the Restatement (Second) of Agency § 220(2) sets out several relevant factors to be considered in deciding whether one is an employee or an independent contractor:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

The Kansas Supreme Court has indicated that the Restatement factors quoted above should be considered in determining the issue in question. See *Brillhart v. Scheier,* 243 Kan. 591, 597, 758 P.2d 219 (1988).

In her argument that Albert was an independent contractor, Knorp seems to rely almost exclusively on the following paragraph in the written employment agreement between Albert and the hospital:

"5. Professional Standards. In the areas of diagnosis and treatment of patients, Physician's professional responsibility shall be complete and [the hospital] shall not *direct, supervise, or control Physician in his professional care of any individual patient.* Physician hereby promises to engage in the practice of his profession on [the hospital's] behalf to the best of his ability and in accordance with the generally accepted community standards of his profession and to faithfully adhere to the standards as set by the licensing board of the State of Kansas and the rules and regulations of [the hospital]." (Emphasis added.)

We hold that standing alone, the mere fact that the hospital had no right to control or supervise Albert in his "professional care of any individual patient" was not sufficient to create an independent contractor relationship.

First, it appears there may be some medical ethical provisions which require the language in paragraph 5 to be in any physician's employment contract. This is suggested by two federal circuit court decisions. See *Quilico v. Kaplan,* 749 F.2d 480, 483-84 (7th Cir. 1984); *Lurch v. United States,* 719 F.2d 333, 337 (10th Cir. 1983). If, as we conclude, physicians are required to either put such a clause in their employment contract or are required to in fact utilize their independent judgment regardless of what the contract says, then it would follow that a physician could never be an employee but would always be an independent contractor. We do not believe that such a position is supported by the law in this state and certainly would be contrary to the intent of the parties. We conclude that rather than relying on certain isolated provisions in the agreement, the status of a physician should be determined by careful attention to the entirety of the contractual agreement and to the intent of the parties.

The Georgia Court of Appeals, in *Newton County Hosp. v. Nickolson,* 132 Ga. App. 164, 167, 207 S.E.2d 659 (1974), held:

"Although the hospital administrator averred that no hospital employee or staff member had the right to control the medical techniques or judgment of the physicians in command of the emergency room, *this averment alone is insufficient to demonstrate unequivocally that Dr. Feinfeld was an independent contractor.* Other affidavit averments indicate that this doctor came within the category of being a servant of the hospital as he was paid an hourly wage and his schedule was arranged by the hospital." (Emphasis added.)

We prefer to construe the employment agreement in this case by the totality of all of its provisions and to give considerable weight to the intent of the parties. We also believe that a modicum of common sense should be a factor in reaching a decision.

While the agreement does not give the hospital control over the details of the treatment of patients, it gives Albert precious little control over any other area of his life as a physician. For instance, the agreement requires Albert to provide services to those patients

"who present themselves or who are presented to [the hospital] for treatment." This indicates that Albert was not entitled to refuse service to anyone. He was required to serve those patients who came into the hospital in which he worked. It appears to us that a physician working as an independent contractor would have the authority to decide whom he or she would treat and whom he or she would not treat.

If one analyzes the agreement with regard to the factors stated in the Restatement (Second) of Agency, certainly more of those factors point to the existence of an employer/employee relationship than point to an independent contractor relationship. In particular, we cite the following:

(a) *Control over details.* Although Albert was to have independence with respect to the details of the treatment of his patient, the hospital had the right to exercise enough control over him to see that his treatment fell within the standards of the profession and standards as set forth in the hospital rules and regulations. The times he was required to be at the hospital were set by the hospital and not by Albert.

(b) *Who supplies the instrumentalities, tools, and place of work.* The employment contract required the hospital to provide "such facilities, equipment, and supplies as it seems necessary for Physician's performance of professional duties." The hospital was responsible for purchasing malpractice insurance and gave Albert an allowance for professional meetings, professional dues, and license dues. These were items which, if Albert were an independent contractor, he would be paying for himself.

(c) *Length of contract.* The first agreement between Albert and the hospital was from April 1995 until April 1996. The agreement in effect at the time Knorp's cause of action arose was in effect from July 1996 until June 1998. Albert was prohibited under the employment agreement from working for anyone else during the period of time he was employed by the hospital.

(d) *Method of payment.* The employment agreement required the hospital to pay Albert a salary based upon his time. He was compensated in the same manner and in the same fashion as any other employee.

(e) *Intent of the parties.* As we read the agreement, the parties clearly intended that Albert should be considered an employee of the hospital. The words "independent contractor" do not appear in the employment agreement. If the hospital had intended to create an independent contractor relationship so as to avoid vicarious liability, we suspect the agreement would have expressly said so. There is nothing in the agreement to hint that the parties intended an independent contractor relationship.

We conclude that when viewed in its entirety, the agreement reveals an intent by the parties that Albert be considered an employee of the hospital. It also contains a sufficient number of provisions to overcome the fact that the hospital was not able to control Albert in his care of the patients. We hold the trial court did not err in concluding that Albert was an employee of the hospital and that notice was required to be given under the Kansas Tort Claims Act.

## JUDICIAL ESTOPPEL

In order to save her action, Knorp attempts to make an equitable estoppel argument which we consider not only to be disingenuous but inconsistent with the manner in which Knorp has proceeded in this litigation. Knorp suggests that Albert is either estopped from arguing or has waived the right to argue that he is an employee of the hospital. This argument is premised on the fact that in the 1998 lawsuit, Albert and the hospital denied that he was an employee, and it is the position of Knorp that having denied it in the 1998 lawsuit, Albert should not be permitted to claim it in the 1999 lawsuit.

We disagree.

The first thought that comes to mind is that Knorp has totally changed her approach from the 1998 lawsuit to the 1999 lawsuit. In 1998, she claimed that Albert was an employee. In 1999, she inferred that he was an independent contractor. If Knorp was not estopped from changing her theory of recovery, then we cannot imagine how Albert could be estopped from changing his theory of defense.

A party can assert judicial estoppel when four elements are satisfied: (1) a position taken must contradict a declaration in a prior judicial action; (2) the two actions must involve the same parties; (3) the party asserting the theory must have changed its position; and (4) the changed position must have been in reliance on the prior statement. See *Griffin v. Dodge City Cooperative Exchange,* 23 Kan. App. 2d 139, 151, 927 P.2d 958 (1996), *rev. denied* 261 Kan. 1084 (1997).

One reason why judicial estoppel is not appropriate is that the same parties are not involved in this action as were involved in the 1998 action. The hospital directors were involved in the 1998 lawsuit but not in the 1999 lawsuit. The law would not hold Albert to pleadings made largely at the direction of the directors of the hospital in the 1998 lawsuit.

The reasons stated above, among others, compel us to hold that Albert was not estopped to take the position that he took in the 1999 lawsuit.

The trial court correctly concluded that neither judicial estoppel nor waiver was applicable in this case.

We affirm the trial court's decision granting summary judgment in favor of Albert.

Affirmed.