Powell, J.:
Aaron Nash appeals the district court's grant of summary judgment in favor of Patrick T. Blatchford, M.D., for Nash's failure to file a notice of claim under *567 K.S.A. 2017 Supp. 12-105b(d). Nash argues the district court erred because (1) he was not required to file a notice of claim since Blatchford is an independent contractor of a municipal hospital and K.S.A. 2017 Supp. 40-3403(h) abrogated a hospital's vicarious liability in malpractice claims; (2) if Blatchford is an employee of a municipal hospital, the district court erred in retroactively applying the 2015 *594 amendments to K.S.A. 12-105b(d) to bar his claim; and (3) the K.S.A. 2017 Supp. 12-105b(d) notice of claim requirement denies equal protection under the laws to medical malpractice victims of physicians employed at municipal hospitals. For the reasons more fully explained below, we disagree and affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 5, 2017, Nash filed a medical malpractice suit against Blatchford, asserting damages from an alleged negligently performed surgery in January 2015. After filing his answer, Blatchford moved for summary judgment, arguing the district court lacked jurisdiction over Nash's claim because Blatchford is an employee at a municipal hospital and Nash was required and failed to file a written notice of claim under K.S.A. 12-105b(d) before suing him in the district court. Blatchford attached an affidavit (not included in the record on appeal), attesting to his employment status at South Central Kansas Regional Medical Center (South Central). Blatchford also argued that because of Nash's failure to comply with the notice requirement and the expiration of the two-year statute of limitations on his claim, any later attempt by Nash to refile the claim after filing a notice of claim was time-barred according to Gessner v. Phillips County Comm'rs , 270 Kan. 78, 11 P.3d 1131 (2000).
Nash asserted several arguments in response, including-assuming Blatchford is an employee of South Central-that the 2015 amendments to K.S.A. 12-105b(d) should not apply retroactively to bar his claim and he need not file a notice of a claim under K.S.A. 12-105b(d) because K.S.A. 40-3403(h) abrogated a hospital's vicarious liability for a doctor's negligence whether the doctor was an employee or an independent contractor. Finally, Nash argued that because the parties had not conducted discovery, summary judgment was premature on whether Blatchford was an employee or an independent contractor of South Central.
After hearing additional argument, the district court ordered the parties to conduct discovery and to submit supplemental briefing on Blatchford's employment status. These facts remained uncontroverted. Blatchford is licensed to practice medicine as a physician *595 in Kansas. South Central is a municipally owned hospital subject to K.S.A. 75-6101 et seq., the Kansas Tort Claims Act (KTCA). Blatchford entered into a written contract with South Central in 2006 during his residency program and then entered into a new written contract in 2008 (with a 2010 addendum), which is still in effect. Nash asserted no claims against South Central. Between December 2014 and January 7, 2015, Nash received medical care and treatment from Blatchford.
After discovery, the district court granted summary judgment for Blatchford, holding it lacked jurisdiction to consider Nash's claim because Blatchford was an employee of South Central and Nash had failed to file a notice of claim as required under K.S.A. 2017 Supp. 12-105b(d).
Nash timely appeals.
I. WAS NASH REQUIRED TO FILE A NOTICE OF CLAIM ?
Our standard of review of a district court's grant of summary judgment is well established:
" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' An appellate court reviewing a district court's ruling on a motion for summary judgment applies the same legal standard and, because the motion is considered on uncontroverted facts and under the same standard as the district court, reviews the matter de novo as a question of law, granting no deference to the district court's judgment. [Citations *568 omitted.]" Cady v. Schroll , 298 Kan. 731, 734, 317 P.3d 90 (2014).
To the extent our review requires interpretation of K.S.A. 2017 Supp. 12-105b, or any other relevant statute, this too
"is a question of law subject to de novo review. When interpreting a statute, the court first attempts to discern the legislature's intent through the language enacted, giving common words their ordinary meanings. When statutory language is plain and unambiguous, the court does not speculate as to legislative intent, and does not read into the statute words not readily found there. It is only when the language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning. [Citations omitted.]" Whaley v. Sharp , 301 Kan. 192, 196, 343 P.3d 63 (2014).
*596 "[E]ven when various statutory provisions are unambiguous, we may still construe them in pari materia with a view of reconciling and bringing the provisions into workable harmony." Neighbor v. Westar Energy, Inc. , 301 Kan. 916, 919, 349 P.3d 469 (2015) (citing Northern Natural Gas Co. v. ONEOK Field Services Co. , 296 Kan. 906, 918, 296 P.3d 1106, cert. denied 571 U.S. 826, 134 S.Ct. 162, 187 L.Ed.2d 40 [2013] ).
K.S.A. 2017 Supp. 12-105b(d) states:
"(d) Any person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the [KTCA] shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: ... Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the [KTCA] shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action." (Emphasis added.)
The notice of claim requirement under K.S.A. 2017 Supp. 12-105b(d) is a jurisdictional prerequisite to suing a municipality under the KTCA. Sleeth v. Sedan City Hospital , 298 Kan. 853, Syl. ¶ 1, 317 P.3d 782 (2014).
Given that it is undisputed that Nash failed to give proper notice under K.S.A. 2017 Supp. 12-105b, we must determine the existence of two conditions precedent to the notice requirement: First, whether Nash's claims fall under the KTCA; and second, whether Blatchford is an employee of South Central. If both are answered in the affirmative, then Nash was required to give notice under K.S.A. 2017 Supp. 12-105b, and his failure to do so bars his claims. We will address each in order.
A. Did Nash's claims fall under the KTCA?
At common law, the longstanding rule was that the State, as the sovereign, was immune from suit unless it consented. The *597 Legislature provided that consent when it enacted the KTCA; now, subject to certain exceptions, liability is the rule and immunity the exception. Fettke v. City of Wichita , 264 Kan. 629, 633, 957 P.2d 409 (1998) ; see also K.S.A. 2017 Supp. 75-6103(a) (each governmental entity liable for damages caused by negligent acts of its employees acting within scope of employment). One exception is that claims based upon the rendering of professional services by a health care provider, such as the practice of medicine, are excluded from coverage under the KTCA. K.S.A. 2017 Supp. 75-6115(a).
K.S.A. 2017 Supp. 75-6115(c)(3) utilizes the health care provider definition from *569 K.S.A. 40-3401(f) : "a person licensed to practice any branch of the healing arts by the state board of healing arts" and "a medical care facility licensed by the state of Kansas." K.S.A. 2017 Supp. 75-6115(c)(4) includes a hospital within the definition of a medical care facility contained in K.S.A. 65-425. It is uncontroverted that South Central is a municipal hospital and that Blatchford is a physician licensed to practice by the Board of Healing Arts; both are health care providers, suggesting, at first blush, that they fall under the exclusion to coverage under the KTCA.
But the same statute that excludes the rendering of professional services by a health care provider from the KTCA also lists six exceptions from this exclusion, one being any claim made against "a hospital owned by a municipality and the employees thereof." K.S.A. 2017 Supp. 75-6115(a)(2). Here, it is also undisputed that South Central is owned by a municipality; therefore, it would appear that any malpractice claim against South Central or its employees must fall under the KTCA. However, Nash argues that Blatchford, as a health care provider, cannot be an employee as defined by the KTCA because health care provider is not included within the definition of employee contained in K.S.A. 2017 Supp. 75-6102(d)(1), meaning that the exclusion from the KTCA should apply to Blatchford because he is a health care provider rendering professional services.
Nash is correct that K.S.A. 2017 Supp. 75-6102(d)(1) broadly lists a number of persons to be considered employees under the KTCA and does not include health care providers. But we disagree with Nash that the Legislature intended to exclude as employees all *598 persons not specifically included in the statute. First, K.S.A. 2017 Supp. 75-6102(d)(2)(B) specifically excludes independent contractors as employees, suggesting that the list of employees contained in K.S.A. 2017 Supp. 75-6102(d)(1) is not exclusive. Second, K.S.A. 2017 Supp. 75-6102(d)(1)(A) specifically includes "employee" in its definition of employee, meaning the Legislature intended to provide a broad definition of the term. Thus, we reject Nash's contention that a health care provider such as Blatchford must be excluded from the definition of employee under the KTCA. Accordingly, Nash's claims against Blatchford fall within the KTCA if Blatchford is an employee of South Central. Therefore, we must determine whether the district court properly found Blatchford to be an employee based on his contract with South Central.
B. Is Blatchford an employee or an independent contractor of South Central?
As a preliminary matter, we note the parties dispute how we should review the district court's ruling that Blatchford was an employee of South Central. Nash argues that whether a person is an employee or an independent contractor is always a question of fact. Blatchford argues that if a written contract controls, then we are to exercise unlimited review over the district court's ruling whether the person is an employee or an independent contractor as a matter of law.
"The criteria for determining whether an employment relationship or, in the alternative, an independent contractor relationship exists vary under different contexts. ... [T]here is no absolute rule for determining whether an individual is an independent contractor or an employee." Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources , 272 Kan. 265, 270, 32 P.3d 1146 (2001).
" 'Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor. However, generally speaking, the question of whether an individual is an employee or an independent contractor is considered a question of fact for the jury or trier of facts.' " McCubbin v. Walker , 256 Kan. 276, 281, 886 P.2d 790 (1994) (quoting Falls v. Scott , 249 Kan. 54, 64, 815 P.2d 1104 [1991] ).
Our Supreme Court recently directed:
*599 " 'The interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review, including whether a written instrument is ambiguous.' [An appellate court's] review is 'unaffected by the lower courts' interpretations or rulings.'
*570 " ' "The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." If, on the other hand, the court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it. In addition,
" ' "[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. ...
" '... But, if the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary declaratory judgment is inappropriate.' Waste Connections of Kansas, Inc. v. Ritchie Corp. , 296 Kan. 943, 963-64, 298 P.3d 250 (2013)." Trear v. Chamberlain , 308 Kan. 932, 936-37, 425 P.3d 297 (2018).
Nash does not argue the written contracts between Blatchford and South Central are ambiguous. Instead, he argues that if we review the contractual language and the parties' intent under the 2008 contract and 2010 addendum, we would find that Blatchford is an independent contractor.
We agree with another panel of our court which dealt with the same issue and determined that its standard of review was unlimited because determination of whether the plaintiff was an employee or independent contractor could be determined by examining the relevant written agreement.
"The specific issue argued by Knorp is that the trial court erred in determining that Albert's written contract with the hospital made him an employee rather than an independent contractor. In this context, an appellate court may independently construe a written agreement to determine its legal significance. There are at least two Kansas Supreme Court cases holding that the question of whether one is an employee or independent contractor is generally a question of fact. However, in this case, an unambiguous written contract controls the employment relationship, and we conclude the interpretation of that agreement is properly a matter of law subject to unlimited review. [Citations omitted.]" Knorp v. Albert , 29 Kan. App. 2d 509, 512, 28 P.3d 1024, rev. denied 272 Kan. 1418, --- P.3d ---- (2001).
*600 Accordingly, we apply an unlimited standard of review to determine whether the district court correctly found, as a matter of law, that Blatchford was an employee under the contract.
Although our review focuses on the parties' contractual relationship, as discussed generally above, two statutes also provide a definition of employee that may impact our review. Because we first attempt "to discern the legislature's intent through the language enacted," our review starts there. Whaley , 301 Kan. at 196, 343 P.3d 63.
The KTCA, specifically, K.S.A. 2017 Supp. 75-6102(d)(1)(A), broadly defines an employee as:
"[a]ny officer, employee, servant or member of a board, commission, committee, division, department, branch or council of a governmental entity, including elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation and a charitable healthcare provider[.]"
K.S.A. 2017 Supp. 75-6102(d)(2)(B) largely excludes independent contractors as employees. K.S.A. 2017 Supp. 12-105a(h), which deals with claims against municipalities, defines employee similarly to the KTCA as "any officer, employee, servant or member of a board, commission, committee, division, department, branch or council of a governmental entity, including elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." The statute also excludes independent contractors from its definition of employees: " 'Employee' does not include an *571 independent contractor working for a municipality under contract." But neither statute defines an independent contractor. Compare K.S.A. 2017 Supp. 75-6102(d) with K.S.A. 2017 Supp. 12-105a.
Kansas courts, however, have consistently defined an independent contractor as
"one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of the employer, except as to the results or product of his or her work. The primary test used by the courts ... is whether the employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer but the existence of the right or authority to interfere or control, which renders *601 one a servant rather than an independent contractor. An independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his own methods and who is subject to his employer's control only as to the end product or final result of his work. [Citation omitted.]" Hartford , 272 Kan. at 270-71, 32 P.3d 1146.
But Kansas courts do not rely exclusively on the right to control test and apply other multifactor tests to make the determination of whether a person is an employee or an independent contractor. See, e.g., Olds-Carter v. Lakeshore Farms, Inc. , 45 Kan. App. 2d 390, 401-03, 250 P.3d 825 (2011) (explaining multifactor tests).
Nash argues that Blatchford is an independent contractor because he is the named insured on the malpractice insurance and because South Central has no control over how and when Blatchford operates on patients. Nash relies on one contractual provision to support his argument. That contractual provision states:
"6. PROFESSIONAL RESPONSIBILITY. In the areas of diagnosis and treatment of patients, Doctor's professional responsibility shall be complete and Employer shall not, through its Board of Trustees or any of its officers or employees, direct, supervise or control Doctor in Doctor's professional care of any individual patient; provided, however, Employer shall not be prevented from establishing general rules governing the rendering of medical care to patients or relieving Doctor of the care of an individual patient."
Another panel of this court addressed a similar situation in Knorp . There, Knorp filed a lawsuit to recover damages against Albert for misdiagnosing her. The trial court granted Albert summary judgment because Knorp failed to provide the proper notice pursuant to K.S.A. 2000 Supp. 12-105b(d). Knorp appealed. The Knorp panel then reviewed the factors outlined in the Restatement (Second) of Agency § 220(2) (1958) used to determine if a person is an employee or an independent contractor:
" '(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
" '(b) whether or not the one employed is engaged in a distinct occupation or business;
" '(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
" '(d) the skill required in the particular occupation;
*602 " '(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
" '(f) the length of time for which the person is employed;
" '(g) the method of payment, whether by the time or by the job;
" '(h) whether or not the work is a part of the regular business of the employer;
" '(i) whether or not the parties believe they are creating the relation of master and servant; and
" '(j) whether the principal is or is not in business.' " 29 Kan. App. 2d at 514, 28 P.3d 1024.
*572 Nash argues that we should find Blatchford is an independent contractor and points to Brillhart v. Scheier , 243 Kan. 591, 758 P.2d 219 (1988), for support.
There, a pastor-Scheier-was involved in an automobile accident with the plaintiffs, who sued both Scheier and, under a theory of respondeat superior, the Catholic Diocese of Wichita. The district court granted summary judgment for the diocese and held that Scheier was an independent contractor. On appeal, the plaintiffs argued the district court erred in granting summary judgment because a question of material fact existed for the jury to decide: Whether an employer-employee relationship existed between Scheier and the diocese.
A majority of our Supreme Court held that the district court correctly found Scheier was an independent contractor and the diocese was entitled to judgment as a matter of law. 243 Kan. at 597, 758 P.2d 219. Under the " 'right to control test,' " the following facts supported that Scheier was an independent contractor: The diocese had no control over his day-to-day activities; while the diocese set his salary and could remove Scheier, Scheier had significant control over these areas; Scheier had control over the running of his parish; he performed duties as he saw fit; and the diocese required him to make only annual status and planning reports. While the majority also noted that some of the Restatement factors supported the Brillharts' position-specifically Scheier's long-term employment-the court also held that several other factors supported the diocese's position that the district court did not err in granting summary judgment: The diocese had no control or supervision over the details or completion of Scheier's work, which required a high level of skill and experience; Scheier had control over his workplace, provided his own supplies, and his salary came from *603 parish proceeds. As applied to the circumstances of the case, Scheier drove his own car, paid for his car insurance, and was visiting a friend without the diocese's permission or request.
Blatchford argues we should compare his case to Knorp and find the district court did not err in finding that he is an employee of South Central. On appeal, Knorp argued Albert was an independent contractor, mainly relying on a single clause in Albert's contract prohibiting the hospital from directing, supervising, or controlling his professional care of patients. The panel rejected her argument and found, in part, that the provision might be required in every physician contract to address medical ethics concerns based on two federal court cases: Quilico v. Kaplan , 749 F.2d 480, 483-84 (7th Cir. 1984), and Lurch v. United States , 719 F.2d 333, 337 (10th Cir. 1983). 29 Kan. App. 2d at 514-15, 28 P.3d 1024. The panel concluded that "rather than relying on certain isolated provisions in the agreement, the status of a physician should be determined by careful attention to the entirety of the contractual agreement and to the intent of the parties." 29 Kan. App. 2d at 515, 28 P.3d 1024.
The Knorp panel explained that a doctor who purchases malpractice insurance and pays his or her professional dues or fees is an independent contractor. When applying Albert's contract provisions to the Restatement factors, the panel found the fact that the hospital purchased Albert's malpractice insurance and gave him an allowance to pay for professional meetings and dues indicative that Albert was an employee. The panel held that the intent of the parties-based on the contractual language-showed Albert was an employee, in part, because the words "independent contractor" were not used in Albert's employment agreement. 29 Kan. App. 2d at 516-17, 28 P.3d 1024.
Like the panel in Knorp , when applying the Restatement factors to Blatchford's 2008 contract and 2010 addendum, we find that Blatchford is an employee of South Central.
(1) Length of contract and method of payment
The parties entered a long-term contractual relationship. Under the 2008 contract, South Central and Blatchford entered into an initial two-year term that would continue in one-year terms. The *604 2010 addendum became effective on July 1, 2010, and continues the agreement until June 30, 2019, subject to reviews for compensation and other benefits. *573 South Central pays Blatchford an annual salary with bonuses and requires him to work full time, or 40 hours per week, 52 weeks of the year subject to vacation time. The 2010 addendum also requires Blatchford to assume off-call and on-call duties at South Central. Blatchford receives benefits as a physician employee, has paid time off, and South Central must schedule his vacation or approved absences in a reasonable manner.
(2) The instrumentalities, tools, and place of work
Under the contract, South Central provides Blatchford with facilities, equipment, supplies, and support staff-including receptionists and nurses. South Central reimburses Blatchford for some expenses, such as licensing fees, privileging fees, attendance at professional meetings, subscriptions to professional literature, and any reasonable and necessary professional expenses with advanced approval. South Central pays Blatchford's medical malpractice insurance at least up to the minimum amount required under Kansas law.
(3) Intent of the parties and whether the one employed is involved in a distinct occupation or business
The 2008 contract supports the proposition that the parties intended to establish an employer-employee relationship. The contract expressly defines South Central as "Employer" and Blatchford as "Doctor." Moreover, the contract states that "rather than commencing the private practice of medicine in Arkansas City, Kansas, as contemplated in the [2006 contract], Doctor now wishes to practice medicine as an employee of Employer." Under the contract, Blatchford also agreed to accept employment-subject to his being licensed in Kansas-"as a physician to carry out professional duties of the practice of medicine.
In addition, Blatchford's professional services are not distinct from South Central. South Central permits Blatchford to seek help from any other professional employee to diagnose and treat his *605 patients, and Blatchford agrees to assist other employees. Blatchford must comply with South Central's rules and regulations and carry out and perform any of South Central's orders, directions, and policies which may be required from time to time. South Central provides Blatchford the facilities, equipment, supplies, and support staff. South Central has final authority over accepting patients and sets the fee amounts charged for professional services. While Blatchford must maintain patient medical records, all records remain South Central's property. All fees Blatchford receives are South Central's property, including fees received for work at other hospitals, "moonlighting," teaching, speaking engagements, consultations, etc. Finally, Blatchford cannot engage in any other gainful employment without South Central's prior consent, and he is subject to a noncompete clause if the relationship is terminated.
(4) Control over details
Blatchford acknowledges that South Central provides him with independence on how and when he operates on patients but argues we should not find this fact dispositive for determining whether he is an independent contractor or an employee under the contract. We agree. As the Knorp panel held: "[S]tanding alone, the mere fact that the hospital had no right to control or supervise [the physician] in his 'professional care of any individual patient' was not sufficient to create an independent contractor relationship." 29 Kan. App. 2d at 515, 28 P.3d 1024. Blatchford's argument mirrors the well-established principle that " 'interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners.' " Trear , 308 Kan. at 936, 425 P.3d 297.
Even when considering the specific provision alone, South Central maintains some control over Blatchford's treatment and care of his patients because South Central may create rules governing his work generally and may relieve Blatchford of his care of a patient. Other contractual provisions show South Central maintains some control over Blatchford's work. South Central has final authority over the amount of fees charged for his professional services and whether to *574 accept a new patient, and the fees collected for *606 Blatchford's services and the records created remain South Central's property. South Central also requires Blatchford to comply with its rules and regulations and to carry out any orders, directions, and policies. Finally, under his contract, Blatchford must engage in the practice of medicine to the best of his ability and within the community standards of his profession and he must work full time for the hospital. Based on a review of the contract as a whole, South Central does have some control over Blatchford's work.
While the parties in Brillhart did not review a written contract to determine if Scheier was an employee or an independent contractor, the Restatement requires no contractual or business relationship to make such determination. See Restatement (Second) Agency § 220, comment (1)b. Even without that distinction, Brillhart is distinguishable. Here, South Central has more control over Blatchford's work under the contract than the diocese had over Scheier's work. Specifically, though South Central does not exercise control over the details of Blatchford's highly skilled work, South Central has some control over his work generally. South Central has final authority over Blatchford's acceptance of a new patient and may remove a patient from his care; and South Central requires Blatchford to comply with the rules and regulations, work full time, obtain and maintain his privileges, and perform his work up to community professional standards and to the best of his ability. In addition, South Central has a long-term contractual relationship with Blatchford; pays Blatchford an annual salary with bonuses; pays for his medical malpractice insurance; reimburses some of Blatchford's professional expenses and licensing dues; provides facilities, equipment, supplies, and support staff; and requires that all fees Blatchford receives and patient records he creates remain South Central's property.
When viewing all of the contractual provisions, we find that Blatchford is an employee of South Central. Because Blatchford is an employee of South Central, Nash's claims against him fall under the KTCA and Nash was required by K.S.A. 2017 Supp. 12-105b to file a written notice of claim before suing. Nash did not do so; therefore, his claims are barred.
*607 C. Does K.S.A. 2017 Supp. 40-3403(h) abrogate all hospitals' vicarious liability for medical malpractice?
Nash also argues that because K.S.A. 2017 Supp. 40-3403(h) abrogated all hospitals' vicarious liability for doctors in the medical malpractice context, the notice requirement in K.S.A. 2017 Supp. 12-105b(d) is meaningless and K.S.A. 2017 Supp. 40-3403(h) compels a finding that Blatchford is an independent contractor as a matter of law.
K.S.A. 2017 Supp. 40-3403(h) states:
"A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund. The provisions of this subsection shall apply to all claims filed on or after July 1, 1986."
Interpreting K.S.A. 40-3403(h), our Supreme Court has held that if two health care providers are qualified for coverage under the Health Care Stabilization Fund (Fund) created by the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 et seq., then " K.S.A. 40-3403(h) absolves a health care provider not just from vicarious liability but from any responsibility, including independent liability, if the injured party's damages are derivative of and dependent upon the rendering of or the failure to render professional services by another health care provider." Cady , 298 Kan. 731, Syl. ¶¶ 1, 317 P.3d 90, 2. " 'Vicarious liability' is a term generally applied to legal liability which arises solely because of a relationship and not because of any act of negligence by the person held vicariously liable for the act of another." Bates v. Dodge City Healthcare Group , 296 Kan. 271, Syl. ¶ 6, 291 P.3d 1042 (2013).
But Nash asserts no claims against South Central. As a result, this case does not involve another health care provider's *575 potential vicarious liability for Blatchford's alleged negligence. Nash has sued Blatchford for his acts or omissions while performing surgery or when providing Nash's care and treatment. Assuming Blatchford qualifies as a health care provider under the Fund, K.S.A. 2017 Supp. 40-3403(h) does not prohibit a claim against one health care provider for his or her negligent acts. In addition, *608 K.S.A. 2017 Supp. 40-3403(h) contains no notice provision to conflict with K.S.A. 2017 Supp. 12-105b(d) but eliminates some forms of relief only when two health care providers both have coverage under the Fund. Thus, K.S.A. 2017 Supp. 40-3403(h) does not apply here and does not conflict with K.S.A. 2017 Supp. 12-105b(d).
Nash also argues that the abrogation of vicarious liability under K.S.A. 2017 Supp. 40-3403(h) makes all physicians independent contractors by law. The argument strikes us as one in which the tail is wagging the dog.
Nash's argument appears to rest on the underlying policy of vicarious liability which is also called imputed negligence and respondeat superior. See Bair v. Peck , 248 Kan. 824, Syl. ¶ 2, 811 P.2d 1176 (1991) ("The liability of a principal for the tortious acts of his agents and the liability of a master for the tortious acts of his servant are both grounded upon the doctrine of respondeat superior and are commonly referred to as vicarious liability."). As our Supreme Court has explained:
"The phrase 'imputed negligence' refers to the doctrine which places upon one individual responsibility for the negligence of another. The doctrine of imputed negligence, or respondeat superior, has its origin in public policy. It is elemental that every person conduct his business so as not to cause injury to others, and if he conducts business through others, he is bound to manage them so third persons are not injured by the others while they are doing the principal's business within the scope of their authority. The doctrine is a 'fiction of the law,' not favored in this state, which is limited to master/servant (employer/employee) and joint enterprise relationships. These are relationships in which the potential respondents have sufficient control and responsibility for the actions of others to justify holding them liable for their actions. [Citations omitted.]" Brillhart , 243 Kan. at 593, 758 P.2d 219.
Essentially, Nash argues that because a second health care provider cannot be vicariously liable under K.S.A. 2017 Supp. 40-3403(h) for negligence by a physician who is also covered under the Fund-whether the physician is an employee or independent contractor-then physicians are always independent contractors by law. We disagree because one does not flow from the other. Just because the Legislature abrogates the liability of the principal for the acts of its agent in a particular context does not mean that the agent cannot be an employee of the principal. As we have explained, the contract between Blatchford and South Central here *609 supports the single conclusion that Blatchford is an employee, and the Legislature's decision to eliminate South Central's vicarious liability for any harm that may have resulted from Blatchford's rendering of professional services to Nash is immaterial to that analysis. The district court did not err in concluding that Blatchford was an employee under the contract as a matter of law.
II. DID THE DISTRICT COURT ERR IN APPLYING THE 2015 AMENDMENTS TO K.S.A.12-105b(d) TO NASH'S CLAIM ?
Effective July 1, 2015, the Kansas Legislature amended the notice of claim statute, K.S.A. 12-105b(d). L. 2015, ch. 28, § 2. Of particular importance to us, the prior version of K.S.A. 12-105b did not specifically apply to employees of municipalities. See K.S.A. 12-105b(d). Nash argues the district court erred in retroactively applying the 2015 amendments to K.S.A. 12-105b because his claims accrued before the effective date of those amendments.
"In general, 'a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.' But a 'statutory change [that] does not prejudicially affect the substantive rights of the parties and is merely procedural' in nature may apply retroactively. 'Procedural laws relate to the " 'machinery for carrying on the suit, including *576 pleading, process, evidence, and practice' and 'the mode or proceedings by which a legal right is enforced, that which regulates the formal steps in an action.' " ' In contrast, '[s]ubstantive laws give or define the right, give the right or denounce the wrong, or create liability against a defendant for a tort committed.' [Citations omitted.]" Norris v. Kansas Employment Security Bd. of Review , 303 Kan. 834, 841-42, 367 P.3d 1252 (2016).
Nash relies on a federal district court case- Richard v. City of Wichita , No. 15-1279-EFM-KGG, 2016 WL 5341756, at *13 (D. Kan. 2016) (unpublished opinion)-to argue he has a vested right in his claim filed within the two-year statute of limitations and that the district court cannot retroactively apply the 2015 amendments to K.S.A. 12-105b(d) to destroy his claim. Unfortunately, Nash failed to attach a copy of Richard , an unpublished federal decision, to his brief as required under Kansas Supreme Court Rule 7.04(g)(2)(C) (2018 Kan. S. Ct. R. 45), so we could decline to consider his argument. See In re M.G. , No. 108,637, 2013 WL 2992927, at *6 (Kan. App. 2013) (unpublished opinion).
This failure notwithstanding, Nash's reliance on Richard is *610 misplaced. For background, several Wichita police officers shot Richard's husband on February 25, 2014, striking his body 16 times. Though he survived the shooting, he later committed suicide. Richard filed a notice of claim with the City under K.S.A. 12-105b(d) on February 19, 2015. The City denied her claim, and it was undisputed that Richard did not give notice to the individual officers. On September 16, 2015, Richard sued the officers, in part, and asserted battery claims. The officers argued the district court should dismiss the battery claims as time-barred based on the expiration of the one-year statute of limitations, but Richard argued the district court should retroactively apply K.S.A. 12-105b(d) as amended in 2015 to toll the one-year statute of limitations against the officers. The district court refused to apply the 2015 amendments retroactively and held:
" '[O]nce a plaintiff's claim is barred by the statute of limitations, it cannot be revived' by the retroactive application of a statute. Therefore, if the claims against the individual officers were time-barred before § 12-105b(d) was amended, then the Court cannot apply the amendment retroactively. On December 24, 2014, Whaley held that § 12-105b(d) did not apply to individual municipal employees. The current version of the statute, that includes municipal employees, did not go into effect until July 1, 2015. So from December 24, 2014, until July 1, 2015, a claimant's notice to a municipality under § 12-105b(d) did not toll the statute of limitations with regards to individual municipal employees. Therefore, Plaintiff's notice to the City on February 19, 2015, did not toll the statute of limitations with regards to the officers. And so on February 25, 2015, the statute of limitations for a battery action against the individual officers had expired: the officers had a vested right in the statute of limitations defense. The Court will not retroactively apply a statute that would modify 'a vested right of defense that existed prior to the effective date of the procedural statute extending the statute of limitations.' " 2016 WL 5341756, at *13.
Nash's vested right claim differs from the officers' claim in Richard . Nash has no vested right in a statute of limitations defense. Instead, Nash is seeking to pursue his claim filed within the statute of limitations and avoid a dismissal from his failure to comply with the notice of claim statute that was amended after his claim accrued. Thus, Richard does not support Nash's argument.
Our Supreme Court reviewed whether to apply an amendment to the K.S.A. 12-105b(d) notice requirements under similar circumstances to our case in *611 Stevenson v. Topeka City Council , 245 Kan. 425, 781 P.2d 689 (1989). In Stevenson , the amended statute "became effective on July 1, 1987-prior to the time Stevenson filed her petition on July 21, 1987, but subsequent to July 23, 1985, the date her tort claim accrued." 245 Kan. at 427, 781 P.2d 689. Our Supreme Court denied a similar vested right defense argument as misplaced but reasoned that there was merit in the claim that retrospective operation of the statute would modify Stevenson's vested right. The Stevenson court found that 23 *577 days was not a reasonable time for Stevenson to comply with the notice requirements and refused to apply the 1987 amendments retroactively. 245 Kan. at 429-30, 781 P.2d 689. Our Supreme Court held that "[a] procedural statute will not be given retrospective application where a party does not have a reasonable time after the enactment of the statute to comply with notice requirements before the suit is barred." 245 Kan. 425, Syl. ¶ 4, 781 P.2d 689.
Applying Stevenson , we reject Nash's argument because he had a reasonable amount of time after the enactment of the 2015 amendments to comply with the notice requirements. Nash filed his petition on January 5, 2017; his claim accrued on January 9, 2015. The 2015 amendments became effective July 1, 2015, after Nash's claim accrued but before he filed his petition. See L. 2015, ch. 28, § 2. Nash had about one and a half years after the enactment of the 2015 amendments to comply with the notice requirements before his suit was barred. Thus, because Nash had a reasonable time to comply with the notice of claim requirement, the district court did not err in applying the 2015 amendments to Nash's claim.
III. DO THE 2015 AMENDMENTS TO K.S.A.12-105b(d) DENY MEDICAL MALPRACTICE VICTIMS OF DOCTORS EMPLOYED AT MUNICIPAL HOSPITALS EQUAL PROTECTION UNDER THE LAW ?
In his final claim, Nash argues that the 2015 amendments to K.S.A. 12-105b(d) deny medical malpractice victims of municipally employed physicians equal protection under the law.
"The Fourteenth Amendment to the United States Constitution guarantees equal protection of the laws, and the Kansas Constitution Bill of Rights § 1 provides virtually the same protection. When the constitutionality of a statute is challenged on the basis of an equal protection violation, courts must construe the statute as constitutional if there is any reasonable way to do so. Consequently, in *612 reviewing a statute we presume that it is constitutional and resolve all doubts in favor of its validity. An appellate court conducts unlimited review of this question because it presents a question of law.
"The first step of an equal protection analysis is to determine the nature of the legislative classifications and whether the classifications result in arguably indistinguishable classes of individuals being treated differently. Only if there is differing treatment of similarly situated individuals are the federal and Kansas Equal Protection Clauses implicated. ...
"After determining the nature of the legislative classifications, a court examines the rights which are affected by the classifications. The nature of the rights dictates the level of scrutiny to be applied. Federal and Kansas courts have long delineated three levels of scrutiny in equal protection cases: (1) the rational basis standard to determine whether a statutory classification bears some rational relationship to a valid legislative purpose; (2) the heightened or intermediate scrutiny standard to determine whether a statutory classification substantially furthers a legitimate legislative purpose; and (3) the strict scrutiny standard to determine whether a statutory classification is necessary to serve some compelling state interest. ...
"The final step of the analysis requires determining whether the relationship between the classifications and the object desired to be obtained withstands the applicable level of scrutiny. [Citations omitted.]" Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc. , 292 Kan. 285, 315-16, 255 P.3d 1186 (2011).
Nash makes a three-pronged argument: (1) K.S.A. 2017 Supp. 12-105b(d) treats medical malpractice victims of municipally employed physicians different than victims of nonmunicipally employed physicians; (2) the rational basis standard applies to his equal protection challenge; and (3) K.S.A. 2017 Supp. 12-105b(d) lacks any rational basis in law because requiring notice of a claim to a municipal hospital in which it cannot be held vicariously liable furthers no legitimate governmental interest.
Blatchford does not contest Nash's first two arguments, so we examine Nash's equal protection challenge under the rational basis *578 standard. See 292 Kan. at 316, 255 P.3d 1186. But Blatchford argues that the K.S.A. 2017 Supp. 12-105b(d) notice of claim requirement serves a legitimate purpose, based on reasoning in King v. Pimentel , 20 Kan. App. 2d 579, 590, 890 P.2d 1217 (1995), because K.S.A. 2017 Supp. 12-105b affords a municipality 120 days to investigate a claim, obtain legal advice and conduct discovery, and approve or deny a claim before a suit is filed. *613 Under a rational basis review,
"[w]ith regard to the evidence, '[a] State ... has no obligation to produce evidence to sustain the rationality of a statutory classification.' ' "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." [Citations omitted.]' Therefore, a rational basis will be found for a classification 'if any state of facts reasonably may be conceived to justify it.' [Citations omitted.]" Christopher v. State , 36 Kan. App. 2d 697, 709, 143 P.3d 685 (2006).
Even if Nash's claim meets the first two steps, whether a municipal hospital can be vicariously liable for a municipally employed physician's malpractice does not negate the legitimate government interest in giving a municipal hospital notice of a claim against one of its employees. Notice statutes do not deny equal protection because " 'the requirement that claimants give notice of their claim is a reasonable restriction that applies equally to all persons wishing to sue the government.' " Phillips v. Humble , 587 F.3d 1267, 1273-74 (10th Cir. 2009). In U.S.D. No. 457 v. Phifer , 729 F.Supp. 1298, 1306 (D. Kan. 1990), the federal district court held that K.S.A. 12-105b did not offend the plaintiff's due process and equal protection rights: "The purpose of this provision is obviously to afford the public entity the opportunity to investigate the claim, to assess its liability, to attain settlement, and to avoid costly litigation. Therefore, the legislative classification of claims against public entities for special notice requirements serves a rational purpose." While South Central's concern about costly litigation is greatly mitigated by the fact that it cannot be held liable for Blatchford's actions, it does have legitimate competency and patient care interests which justify notice. See K.S.A. 2017 Supp. 65-4915 (peer review process). Nash's equal protection claim lacks merit.
In conclusion, the unambiguous language of K.S.A. 2017 Supp. 12-105b(d) requires a person to comply with the notice of claim requirement when bringing any suit under the KTCA against a municipality, a municipal employee, or both. Although Nash's malpractice claim involved the rendering of professional services by a health care provider, Nash's suit was not excluded as a claim under the KTCA because Nash sued an employee of a hospital owned by a municipality. Accordingly, the district court only had *614 jurisdiction to hear Nash's malpractice claims against Blatchford if proper notice had been given. As it is undisputed that Nash never filed a notice of claim under K.S.A. 2017 Supp. 12-105b, Nash's claims are barred. The district court did not err in granting summary judgment in favor of Blatchford.
Affirmed.